# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **EMMA MOORE; GREGORY FITTS,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:08-CV-202-RDP** |
| | } | |
| **MIKE HALE, in his individual** | } | |
| **capacity and in his official capacity as** | } | |
| **Sheriff of Jefferson County,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION AND ORDER

The court has before it the May 11, 2010 second motion (Doc. #63) of Defendant Mike Hale

("Hale") for summary judgment, as well as the June 14, 2010 motions (Docs. #87, 88) of Plaintiffs

Emma Moore ("Moore") and Gregory Fitts ("Fitts") (collectively referred to herein at times as

"Plaintiffs") to strike certain evidentiary materials.  Pursuant to the court's orders of February 11,

2010 (Doc. #48) and May 27, 2010 (Doc. #82), the motions are under submission and considered

herein without oral argument.

Having considered the briefs and evidentiary submissions, the court finds that Hale's motion

for summary judgment is due to be granted.  The motions to strike are due to be granted in part,

denied in part, and mooted as set out herein.  Where potions of the evidentiary motions (Docs. # 87,

88) are not specifically mentioned herein, they are **MOOT** as irrelevant and unessential to the court's

decision.

## I.    Procedural History

Plaintiffs Emma Moore and Gregory Fitts commenced this action on February 5, 2008 by

filing a complaint (Doc. #1) in this court for violations of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, codified at 42 U.S.C. §§ 2000e *et seq.*, 42 U.S.C. § 1981, and the Fourteenth Amendment to the Constitution of the United States.  (*See* Compl. ¶ 1). On December 3, 2008, after being granted leave to take action, (*see* Order of December 2, 2008), Plaintiffs filed an Amended Complaint (Doc. #18), which complaint continued to seek redress under Title VII, § 1981, and the Fourteenth Amendment, and added factual allegations pursuant to two charges filed with the Equal Employment Opportunity Commission ("EEOC") on May 24, 2007 and January 22, 2008.

The parties filed an initial round of briefs on Defendant Mike Hale's first motion for summary judgment (Doc. #28) in June, July, and August 2009.  (*See* Docs. #28-39).  However, because those briefs left the court puzzled as to the claims asserted by each individual plaintiff and possible defenses applicable thereto, the court, after a status conference with the parties, entered an order (Doc. #48) directing the parties[1] to submit a joint status report outlining: (1) the specific employment decision challenged (*e.g.*, the disputed promotion decision), (2) the date of that challenged employment decision, (3) the statue under which the challenged employment decision is contested, (4) the specific type of claim asserted under each statute (*e.g.*, retaliation, disparate treatment based upon race, disparate treatment based upon gender), and (5) any defenses asserted with respect to each such challenged employment decision.  The parties filed a Joint Submission of Claims and Defenses (Doc. #50) on March 19, 2010, which submission will, along with the renewed

---

[1] In addition to directing the parties to file the joint report, the February 11, 2010 order also found this case appropriate for mediation and directed the parties to promptly seek Fern Singer to mediate the case.  (*See* Doc. #48).  The parties *did* retain Ms. Singer, then filed a join motion for extension of time for mediation (*see* Doc. #51) and then sought to have the mediation order vacated (*see* Doc. #56).  Such behavior was, and continues to be, baffling to the court.

briefs filed on the pending summary judgment, aid the court in determining the claims that require

analysis herein.

The parties have each filed briefs and submitted evidence in support of their respective

positions concerning the pending second motion for summary judgment.[2]  On May 11, 2010, Hale

submitted evidence[3] (Doc. #63, Exhs. 1-39) in support of the motion and also filed a supporting

---

[2] Another challenge for counsel on both sides in this case was filing evidentiary submissions that complied with Federal Rule of Civil Procedure 5.2.  (*See* Docs. # 59, 61, 62, 64, 66, 67, 79, 80, 82).

[3] Defendant Hale submitted the following in support of summary judgment: the deposition of Emma Moore (Exhibit 1); the deposition of Gregory Fitts (Exhibit 2); the deposition of Mike Hale (Exhibit 3); the deposition of Sergeant Deborah Guy (Exhibit 4); the deposition of Sergeant James Roberson (Exhibit 5); the deposition of Randy Schlitz (Exhibit 6); the deposition of Allen Farley (Exhibit 7); the affidavit of James Atkinson (Exhibit 8); the affidavit of Carl Johnson (Exhibit 9); the affidavit of Sheriff Mike Hale (Exhibit 10); the affidavit of Captain Ron Eddings (Exhibit 11); June 7, 2004 Certificate of Eligibles for Sheriff's Lieutenant (Exhibit 12); October/November 2007 Captain Promotion Documents (Exhibit 13); the deposition of Aubrey Finley (Exhibit 14); December 5, 2005 Review Committee Scoring (Exhibit 15); Summary of Promotional File Contents (Exhibit 16); June 15, 2005 memorandum re: ranking of Richardson and Berry (Exhibit 17); June 13, 2005 Lieutenant Promotional Recommendation List (Exhibit 18); June 2005 note re: file points not used (Exhibit 19); July 13, 2005 memorandum re: ranking of Lieutenant Candidates (Exhibit 20); Promotional Score Sheet without computation of "file points" for June 2005 Lieutenant promotions (Exhibit 21); July 2005 Lieutenant Promotional Recommendation List (Exhibit 22); January 14, 2008 List of Lieutenant Promotional Recommendation (Exhibit 23); July 11, 2005 Fitts EEOC Charge, no. 130-2005-05365 (Exhibit 24); July 11, 2005 Moore EEOC Charge, no. 130-2005-05352 (Exhibit 25); April 10, 2006 correspondence re: Moore withdrawing Charge (Exhibit 26); January 22, 2008 Fitts EEOC Charge, no. 420-2008-01032 (Exhibit 27); May 24, 2007 Fitts EEOC Charge, no. 420-2007-03083 (Exhibit 28); December 1, 2004 Moore EEOC Charge, no. 130-2005-00849 (Exhibit 29); documentation re: release of inmate (Exhibit 30); reprimands re: release of inmate (Exhibit 31); excerpts from the Personnel File of Tom Swatek (Exhibit 32); excerpts from the Personnel File of Ken Rich (Exhibit 33); and December 2005 Lieutenant Promotional Recommendation List (Exhibit 34); the deposition of Charles Buchannon (Exhibit 35); polygraph examiner's report (Exhibit 36); certification list for Sheriff's Captain position dated February 11, 2008 (Exhibit 37); promotional review board notes dated February 18, 2008 (Exhibit 38); promotional review board notes dated March 6, 2008 (Exhibit 39).

memorandum brief (Doc. #63).   Plaintiffs submitted evidence[4] (Docs. #68-78, 83, 84)[5]

_____

        [4] Plaintiffs submitted the following in opposition to summary judgment: Promotional Recommendation List (Exhibit 1); Promotional Packet Contents (Exhibit 2); the Review Committee point system dated 12/5/05 (Exhibit 3); interview question Lieutenant interviews 11/30/05 (Exhibit 4); Personnel File Review Form of Anthony Richardson (Exhibit 5); Personnel File Review Form of Dennis Berry (Exhibit 6); Personnel File Review Form of Gregory Fitts (Exhibit 7); Personnel File Review Form of Emma Moore (Exhibit 8); Personnel File Review Form of Gregory Moore dated 6/1/05 (Exhibit 9); Personnel File Review Form of Emma Moore dated 6/1/05 (Exhibit 10); Personnel File Review Form of Dennis Berry dated 6/1/05 (Exhibit 11); Personnel File Review Form of Anthony Richards dated 6/1/05 (Exhibit 12); Promotional Interview Pool Question 1 Deborah Guy dated 1/16/08 (Exhibit 13); Promotional Interview Pool Question 1 Drummond Liddell dated 1/16/08 (Exhibit 14); Promotional Interview Pool Question 1 Roger Holifield dated 1/16/08 (Exhibit 15); Promotional Interview Pool Question 1 Gregory Fitts dated 1/16/08 (Exhibit 16); Promotional Interview Pool Question 1 Deborah Guy dated 1/16/08 (Exhibit 17); Promotional Interview Pool Question 2 Drummond Liddell dated 1/16/08 (Exhibit 18); Promotional Interview Pool Question 2 Roger Holifield dated 1/16/08 (Exhibit 19); Promotional Interview Pool Question 2 Gregory Fitts dated 1/16/08 (Exhibit 20); Promotional Interview Pool Question 2 Deborah Guy dated 1/16/08 (Exhibit 21); Promotional Interview Pool Question 3 Drummond Liddell dated 1/16/08 (Exhibit 22); Promotional Interview Pool Question 3 Roger Holifield dated 1/16/08 (Exhibit 23); Promotional Interview Pool Question 3 Gregory Fitts dated 1/16/08 (Exhibit 24); Promotional Interview Pool Question 4 Deborah Guy dated 1/16/08 (Exhibit 25); Promotional Interview Pool Question 4 Drummond Liddell dated 1/16/08 (Exhibit 26); Promotional Interview Pool Question 4 Roger Holifield dated 1/16/08 (Exhibit 27); Promotional Interview Pool Question 4 Gregory Fitts dated 1/16/08 (Exhibit 28); Promotional Interview Personal Appearance Assessment Deborah Guy dated 1/16/08 (Exhibit 29); Promotional Interview Personal Appearance Assessment Drummond Liddell dated 1/16/08 (Exhibit 30); Promotional Interview Personal Appearance Assessment Roger Holifield dated 1/16/08 (Exhibit 31); Promotional Interview Personal Appearance Assessment Gregory Fitts dated 1/16/08 (Exhibit 32); Promotional Interview Performance Evaluation Guide of Deborah Guy dated 1/16/09 (Exhibit 33); Promotional Interview Performance Evaluation Guide of Gregory Fitts dated 1/16/08 (Exhibit 34); Promotional Interview Performance Evaluation Guide of Deborah Guy dated 1/14/08 (Exhibit 35); Promotional Interview Personnel File Review Form Gregory Fitts dated 1/14/08 (Exhibit 36); Promotional Interview Personnel File Review Form Deborah Guy 1/16/08 (Exhibit 37); memorandum dated 6/15/05 from Costa to Atkinson re: Lieutenant's review (Exhibit 38); Promotional Recommendation List dated 6/13/05 (Exhibit 39); The Review Committee Point System (Exhibit 40); JCSDLT (Exhibit 41); For Your Information (Exhibit 42); memorandum dated 7/13/05 from Costa to Hale re: Lieutenant's promotion review committee (Exhibit 43); Promotional Interview Pool Question 1 D. Guy dated 1/16/08 (Exhibit 44); Promotional Interview Pool Question 1 D. Liddell dated 1/16/08 (Exhibit 45); Promotional Interview Pool Question 1 Holifield dated 1/16/08 (Exhibit 46); Promotional Interview Pool Question 1 G. Fitts dated 1/16/08 (Exhibit 47); Promotional Interview Pool Question 2 D. Liddell dated 1/16/08 (Exhibit 48); Promotional Interview Pool Question 2 G. Fitts dated 1/16/08 (Exhibit 49); Promotional Interview Pool Question 3 D. Guy dated 1/16/08 (Exhibit 50); Promotional Interview Pool Question 3 D. Liddell dated 1/16/08 (Exhibit

51); Promotional Interview Pool Question 3 Holifield dated 1/16/08 (Exhibit 52); Promotional Interview Pool Question 3 G. Fitts dated 1/16/08 (Exhibit 53); Promotional Interview Pool Question 4 G. Fitts dated 1/16/08 (Exhibit 54); Promotional Interview Pool Question 4 D. Guy dated 1/16/08 (Exhibit 55); Promotional Interview Pool Question 4 D. Liddell dated 1/16/08 (Exhibit 56); Promotional Interview Pool Question 4 Holifield dated 1/16/08 (Exhibit 57); Performance Evaluation Guide Sgt. Dennis Berry (Exhibit 58); Performance Evaluation Guide Dennis Berry dated 4/25/05 (Exhibit 59); Promotional Interview Personal Appearance Assessment D. Guy dated 1/16/08 (Exhibit 60); Promotional Interview Personal Appearance Assessment D. Liddell dated 1/16/08 (Exhibit 61); Promotional Interview Personal Appearance Assessment G. Fitts dated 1/16/08 (Exhibit 62); Promotional Interview D. Guy dated 1/16/08 (Exhibit 63); Promotional Interview G. Fitts dated 1/16/08 (Exhibit 64); Promotional Recommendation List dated 2/18/08 (Exhibit 65); Policies and Procedures Chapter 3 Promotion Review Board (Exhibit 66); Promotional Recommendation List dated 12/5/05 (Exhibit 67); JSCDLT (Exhibit 68); Personnel Board of Jefferson County Certification of Eligibles (Exhibit 69); Interview Questions Lieutenant Interviews 11/30/05 (Exhibit 70); Personnel File Review Form J. Vaughn dated 12/04/05 (Exhibit 71); November 30, 2005 Lieutenant Committee Charles Buchannon (Exhibit 72); Promotional Interview Pool Question 1 Deborah Guy dated 1/16/08 (Exhibit 73); Promotional Interview Pool Question 1 Drummond Liddell dated 1/16/08 (Exhibit 74); Promotional Interview Pool Question 1 Roger Holifield dated 1/16/08 (Exhibit 75); Promotional Interview Pool Question 1 Greg Fiats dated 1/16/08 (Exhibit 76); Promotional Interview Pool Question 2 Deborah Guy dated 1/16/08 (Exhibit 77); Promotional Interview Pool Question 2 Drummond Liddell dated 1/16/08 (Exhibit 78); Promotional Interview Pool Question 2 Roger Holifield dated 1/16/08 (Exhibit 79); Promotional Interview Pool Question 2 Greg Fiats dated 1/16/08 (Exhibit 80); Promotional Interview Pool Question 2 Deborah Guy dated 1/16/08 (Exhibit 81); Promotional Interview Pool Question 3 Drummond Liddell dated 1/16/08 (Exhibit 82); Promotional Interview Pool Question 3 Roger Holifield dated 1/16/08 (Exhibit 83); Promotional Interview Pool Question 3 Greg Fiats dated 1/16/08 (Exhibit 84); Promotional Interview Pool Question 4 Deborah Guy dated 1/16/08 (Exhibit 85); Promotional Interview Pool Question 4 Drummond Liddell dated 1/16/08 (Exhibit 86); Promotional Interview Pool Question 4 Roger Holifield dated 1/16/08 (Exhibit 87); Promotional Interview Pool Question 4 Greg Fiats dated 1/16/08 (Exhibit 88); Promotional Interview Pool Question 5 Deborah Guy dated 1/16/08 (Exhibit 89); Promotional Interview Pool Question 5 Drummond Liddell dated 1/16/08 (Exhibit 90); Promotional Interview Pool Question 5 Roger Holifield dated 1/16/08 (Exhibit 91); Promotional Interview Pool Question 5 Greg Fiats dated 1/16/08 (Exhibit 92); Promotional Interview Personal Appearance Assessment Deborah Guy dated 1/16/08 (Exhibit 93); Promotional Interview Personal Appearance Assessment Drummond Liddell dated 1/16/08 (Exhibit 94); Promotional Interview Personal Appearance Assessment Roger Holifield dated 1/16/08 (Exhibit 95); Promotional Interview Personal Appearance Assessment Greg Fiats dated 1/16/08 (Exhibit 96); Promotional Interview Personnel File Review Form Deborah Guy dated 1/14/08 (Exhibit 97); Promotional Interview Personnel File Review Form Drummond Liddell dated 1/14/08 (Exhibit 98); Promotional Interview Personnel File Review Form Roger Holifield dated 1/14/08 (Exhibit 99); Promotional Interview Personnel File Review Form Gregory Fiats dated 1/14/08 (Exhibit 100); Promotional Interview Performance Evaluation Guide Drummond Liddell

dated 1/16/08 (Exhibit 101); Promotional Interview Performance Evaluation Guide Roger Holifield dated 1/16/08 (Exhibit 102); Promotional Interview Performance Evaluation Guide Greg Fiats dated 1/16/08 (Exhibit 103); Promotional Recommendation List dated 1/14/08 (Exhibit 104); Release dated 5/15/07 for Pretrial (Exhibit 105); Promotional Interview Final Score Sheet (Exhibit 106); Promotional Interview Pool Questions 1 Deborah Guy dated 1/16/08 (Exhibit 107); Promotional Interview Pool Questions 1 Drummond Liddell dated 1/16/08 (Exhibit 108); Promotional Interview Pool Questions 1 Roger Holifield dated 1/16/08 (Exhibit 109); Promotional Interview Pool Questions 1 Gregory Fiats dated 1/16/08 (Exhibit 110); Promotional Interview Pool Question 1 Deborah Guy dated 1/16/08 (Exhibit 111); Promotional Interview Pool Question 2 Drummond Liddell dated 1/16/08 (Exhibit 112); Promotional Interview Pool Question 2 Roger Holifield dated 1/16/08 (Exhibit 113); Promotional Interview Pool Question 2 Greg Fiats dated 1/16/08 (Exhibit 114); Promotional Interview Pool Question 2 Deborah Guy dated 1/16/08 (Exhibit 115); Promotional Interview Pool Question 3 Drummond Liddell dated 1/16/08 (Exhibit 116); Promotional Interview Pool Question 3 Roger Holifield dated 1/16/08 (Exhibit 117); Promotional Interview Pool Question 3 Greg Fiats dated 1/16/08 (Exhibit 118); Promotional Interview Pool Question 3 Deborah Guy dated 1/16/08 (Exhibit 119); Promotional Interview Pool Question 4 Drummond Liddell dated 1/16/08 (Exhibit 120); Promotional Interview Pool Question 4 Roger Holifield dated 1/16/08 (Exhibit 121); Promotional Interview Pool Question 4 Greg Fiats dated 1/16/08 (Exhibit 122); Promotional Interview Pool Question 5 Deborah Guy dated 1/16/08 (Exhibit 123); Promotional Interview Pool Question 5 Drummond Liddell dated 1/16/08 (Exhibit 124); Promotional Interview Pool Question 5 Roger Holifield dated 1/16/08 (Exhibit 125); Promotional Interview Pool Question 5 Gregory Fiats dated 1/16/08 (Exhibit 126); Promotional Interview Personal Appearance Assessment Deborah Guy 1/16/08 (Exhibit 127); Promotional Interview Personal Appearance Assessment Drummond Liddell 1/16/08 (Exhibit 128); Promotional Interview Personal Appearance Assessment Roger Holifield (Exhibit 129); Promotional Interview Personal Appearance Assessment Greg Fiats dated 1/16/08 (Exhibit 130); Promotional Interview Personnel File Review Form Deborah Guy dated 1/14/08 (Exhibit 131); Promotional Interview Personnel File Review Form Drummond Liddell dated 1/14/08 (Exhibit 132); Promotional Interview Personnel File Review Form Roger Holifield dated 1/14/08 (Exhibit 133); Promotional Interview Personnel File Review Form Greg Fiats dated 1/14/08 (Exhibit 134); Promotional Interview Performance Evaluation Guide Deborah Guy dated 1/16/08 (Exhibit 135); Promotional Interview Performance Evaluation Guide Drummond Liddell dated 1/16/08 (Exhibit 136); Promotional Interview Performance Evaluation Guide Roger Holifield dated 1/16/08 (Exhibit 137); Promotional Interview Performance Evaluation Guide Greg Fiats dated 1/16/08 (Exhibit 138); Memo dated 5/15/07 Guy to Garnette re: Improper Release of Inmate DeCarius Deon Conner (Exhibit 139); Jefferson County Jail Identification Card (Exhibit 140); E-mail Anderson to Dennis; Johnson, Eddings, Bolzle, Christian, Atkinson re: Computer Screen CRRR (Exhibit 141); Defendant's Response to Plaintiff's Interrogatories and Request for Production (Exhibit 142); Consent Decree with Jefferson County filed 12/29/82 (Exhibit 143); Birmingham Corrections Division (Exhibit 144); Personnel Action Personnel Board of Jefferson County Kenneth Rich (Exhibit 145); Letter dated 10/22/76 Bragan to Rich (Exhibit 146); Memorandum dated 2/2/78 Lionel Bragan, Chief Correctional Officers to Melvin Bailey Sheriff re: Deputy Kenneth Rich (Exhibit 147); Form letter from James Jackson to Kenneth Wayne Rich dated 7/22/96 re: The

Alabama Peace Officers Standard and Training Commission (Exhibit 148); Letter dated 7/7/78 Rogers to Rich re: Disciplinary Action (Exhibit 149); Memorandum dated 4/9/81 Lawley to Rich re: Reprimand (Exhibit 150); Jefferson County Sheriff's Dep't Patrol Division counseling form dated 5/22/79 from Lt. Gardner to C.E. Moore re: Rich (Exhibit 151); Jefferson County Sheriff's Dep't Patrol Division Counseling Form dated 3/28/84 Lt. Sexton to Sgt. Edding re: Rich (Exhibit 152); memorandum from Brooks to Rich re: sick leave (Exhibit 153); dated 9/3/85 Sext to Rich re: reprimand for failure to follow Policy, Rules and Regulations governing the Report of an Accident Involving a County Vehicle (Exhibit 154); memorandum dated 4/2/1986 Rich to Jordan re: Grand Jury 3/4/86 (Exhibit 155); Letter dated 5/20/86 from Cochran to Rich re: Notice of Contemplated Disciplinary Action (Exhibit 156); Promotional Recommendation List dated 11/5/07 (Exhibit 157); Certification List dated 10/31/07 Sheriff's Capt. (Exhibit 158); JSCD Capt. Promotions (Exhibit 159); Interrogatory answers (Exhibit 160); Hale's EEOC position statement (b-15) (Exhibit 161); (B-19) Alabama Criminal Justice Information Center form accessing either directly or indirectly the Law Enforcement Tactical Systems (Exhibit 162); (B-6) Johnson affidavit from the EEOC file (Exhibit 163); (B-2) Swatek written reprimand on Sept. 23, 1991 (Exhibit 164); (B-3) Swatek on January 26, 1984 was give[n] a written reprimand (Exhibit 165); (b-4) Hale made Swatek an acting Lieutenant on Nov. 1, 1996 (Exhibit 166); Policy Manual provisions on PRB interview questions (Exhibit 167); (b-16) Lieutenant Assignment January 2003 (Exhibit 168); (B-10) Promotional interview questions dated 7/9/02 (Exhibit 169); (B-11) Promotional Interview questions used dated 8/19/03 (Exhibit 170); (b-17) Lieutenant assignments January 2004 (Exhibit 171); (b-7) October 14, 2004 posting two lieutenant openings in the Birmingham Corrections Division (Exhibit 172); (b-18) Lieutenant Assignments February 2005 (Exhibit 173); (B-29) Shift Coverage at Birmingham Jail (Exhibit 174); b-33 Certificate of Accomplishment Emma N. Moore (Exhibit 175); B-34 Memorandum dated 4/10/95 Woodward to All Division Commanders re: Change in Assignments (Exhibit 176); Set up Personnel Action Form Emma Lavender (Exhibit 177); Jefferson County Sheriff's Department Certification of Attendance of Sgt. Emma Moore (Exhibit 178); Certificate of Completion Emma Moore (Exhibit 179); Fitts Initial Assignment (Exhibit 180); Fitts various personnel forms showing assessment (Exhibit 181); Certificate of Accomplishments Gregory A. Fitts (Exhibit 182); Letter to Fitts re: selected for promotion to Sergeant (Exhibit 183); Training Certificate Gregory Fitts "Addressing Staff Sexual Misconduct with Offenders" (Exhibit 184); Copy of Tom Swatek's Personnel File (Exhibit 185); Memorandum dated 5/6/86 Garnette to Lakey re" Seizure of Marijuana and subsequent arrest of Etherl Hawes, aka Deber Hardy (Exhibit 186); Memorandum date 6/6/94 Woodward to Bailey re: Internal Investigation of Jail Division (Exhibit 187); Jefferson County Sheriff's Office Administrative Personnel Order dated 11/3/03 re: Moore is reassigned from B'ham Patrol Division to the Internal Affairs Division, Corrections Investigator (Exhibit 188); Memorandum dated 11/12/03 from Costa to McGuffie re: Corrections' Division Internal Affairs Position (Exhibit 189); Memorandum dated 1/7/04 Hale to Moore re: Commendation (Exhibit 190); Moore EEOC charge on November 18, 2004 (Exhibit 191); Fitts EEOC charge on November 18, 2004 (Exhibit 192); EEOC cause determination on Moore charge (Exhibit 193); EEOC cause determination on Fitts charge (Exhibit 194); Portion of Sheriff's Policy and Procedure Manual (Exhibit 195); One day suspension of Berry (Exhibit 196); Notice to Hale of Complaint on Berry (Exhibit 197); Citizen's complaint on Berry (Exhibit 198); Memo from Hale August 9, 2007

in opposition to the motion for summary judgment on May 21, 2010 and June 14, 2010, and on June

14, 2010 filed an opposing brief (Doc. #86).  On June 24, 2010, Hale filed a reply (Doc. #93) to

Plaintiffs' opposition response.

## II.   Legal Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking

---

Promotion Review Policy Update (Exhibit 199); Moore EEOC charge July 11, 2005 (Exhibit 200); Ranking of top three candidates (Exhibit 201); Fitts EEOC charge July 11, 2005 (Exhibit 202); Letter of reprimand to Fitts (Exhibit 203); Determination on Fitts' July 11, 2005 EEOC charge (Exhibit 204); Jefferson County Personnel Board Rule 11.11 (Exhibit 205); EEOC charges of Angela Coleman (Exhibit 206); Declaration of Gregory Fitts (Exhibit 207); Deposition of Emma Moore (Exhibit 208); Deposition of Gregory Fitts (Exhibit 209); Deposition of Mike Hale (Exhibit 210); Deposition of Deborah Guy (Exhibit 211); Deposition of Randy Schlitz (Exhibit 212); Deposition of Allen Farley (Exhibit 213); Deposition of Aubrey Finley (Exhibit 214); Deposition of James Roberson (Exhibit 215); EEOC charges Greg Fitts May 24, 2007 (Exhibit 216); Plaintiff's Response in Opposition to Defendant Mike Hale's Motion for Summary Judgment (Charles J. Buchannon v. Sheriff Mike Hale CV-08-J-0945-S) (Exhibit 217); Buchannon case – Plaintiff's Response to Sheriff Mike Hale's Initial Discovery Request (Exhibit 218); Buchannon – Statement of Position of the Jefferson County Sheriff's Office (Exhibit 219); Buchannon case – deposition of Charles J. Buchannon, April 29, 2009 (Exhibit 220); Buchannon case – deposition of Charles J. Buchannon, May 14, 2009 (Exhibit 221); Buchannon case – deposition of Charles Buchannon, July 21, 2009 (Exhibit 222); Eleventh Circuit Court of Appeals ruling dated May 23, 2005 re: United States of America v. Wyatt Henderson No. 04-11545 (Exhibit 223); Buchannon case – Order doc. #51 Order denying summary judgment in Buchannon v. Hale, CV-08-J-945-S (Exhibit 224); Buchannon case – Order denying motion to strike in Buchannon v. Hale, CV-08-J-945-S, Doc. #52 (Exhibit 225); Order of Dismissal in Buchannon v. Hale, case settled (Exhibit 226); Jefferson County Personnel Board Rules (Exhibit 227); Declaration of Gregory Fitts (Exhibit 228); Sheriff's Office Manual, Chapter 3-03.20 (Exhibit 229).

[5] For ease of reference to the evidentiary submissions made by Plaintiffs, the court refers herein to all of Plaintiffs' evidentiary submissions as Document 68.  The precise exhibit will be denoted by citation, where applicable.

for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See id.* at 323. Once the moving party has met her burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

The method used by the party moving for summary judgment to discharge her initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e., facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

9

If the moving party does not bear the burden of proof at trial, she can satisfy her initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial. The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to *affirmatively* show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's case. *See Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets her initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

III.   **Relevant Undisputed Facts**[6]

    A.   **Introduction**

Plaintiff Emma Moore ("Moore") was hired by the Jefferson County Sheriff's Office ("JCSO") in 1982.  (*See* Doc. #63-1 at 3, ¶ 1; *see also* Doc. #86 at 1, ¶ 1).  She was promoted to Sergeant on March 18, 1989, and served in Internal Affairs and as an Internal Affairs Corrections Investigator.[7]  (*See* Doc. #63-1 at 3, 9, 11 ¶¶ 1, 29, 65; *see also* Doc. #86 at 1, 2, 9, 11 ¶¶ 1, 29, 65, 64; Doc. #93 at 9, ¶ 64).  On January 7, 2004, Moore received a written commendation from Hale for the investigation that she had conducted at the Walker County Jail.  (*See* Doc. #86 at 12, ¶ 67; *see also* Doc. #93 at 10, ¶ 67).  She was promoted to Lieutenant in July 2005.  (*See* Doc. #63-1 at 3, ¶ 1; *see also* Doc. #86 at 1, ¶ 1).

Moore believes that she has been discriminatorily denied fourteen promotions (on five different occasions) during her tenure with the County, on five different occasions: (1) the June 5-6, 2004 Lieutenant positions; (2) the June 15, 2005 Lieutenant positions; (3) the November 6, 2007 Captain positions; (4) the February 26, 2008 Captain positions; and (5) the March 6-7, 2008 Captain positions.  (*See* Doc. #63-1 at 4, ¶ 7; *see also* Doc. #86 at 1, ¶ 7).  She has heard Al Finley, a frequent member of promotional committees, make the following comment that made her think he was prejudiced against females and black employees: "None of them will supervise me."  (*See* Doc. #86 at 21, ¶ 154; *see also* Doc. #93 at 18, ¶ 154).  The comment was made while Finley was engrossed

---

    [6] If the facts are in dispute, they are stated in the manner most favorable to Plaintiffs. *Fitzpatrick*, 2 F.3d at 1115.

    [7] Although Plaintiff Moore contends that she was chosen for that position over another employee because of her experience and expertise, she cites to documents which do not support that contention.  (*See* Doc. #86 at 12, ¶ 66) (*citing* Plaintiff's Exhibits 189, 190).

in a conversation with some white males about a black male having been promoted over a white male.  (*See* Doc. #86 at 21, ¶ 155; *see also* Doc. #93 at 18, ¶ 155).

Plaintiff Gregory Fitts ("Fitts") was hired by the JCSO in 1981 as a deputy sheriff.  (*See* Doc. #63 at 3, ¶ 2; *see also* Doc. #86 at 1, ¶ 2).  He was promoted to Sergeant on July 21, 1993 and was assigned to the jail.  (*See* Doc. #63-1 at 2, ¶ 2; *see also* Doc. #86 at 1, ¶ 2).  As of November 14, 2003 Fitts had 3.5 hours of training on "Addressing Staff Sexual Misconduct with Offenders."  (*See* Doc. #86 at 12, ¶ 73; *see also* Doc. #93 at 10, ¶ 73).  Fitts also completed the First/Second Line Jail Supervisor's Training Program administered by the National Sheriff's Association.  (*See* Doc. #86 at 12, ¶ 72; *see also* Doc. #93 at 10, ¶ 72).

Fitts believes he has been discriminatorily denied eighteen promotions on five separate occasions during his tenure with the County: (1) the June 5-6, 2004 Lieutenant positions; (2) the June 15, 2005 Lieutenant positions; (3) the July 15, 2005 Lieutenant positions; (4) the December 5-6, 2005 Lieutenant positions; and (5) the January 18-21, 2008 Lieutenant positions.  (*See* Doc. #63-1 at 4-5, ¶ 8; *see also* Doc. #86 at 1, ¶ 8).  Fitts also claims that Sheriff Hale made three additional discriminatory employment decisions when Fitts was written up for improperly releasing an inmate on May 15, 2007.  (*See* Doc. #63-1 at 5, ¶ 9; *see also* Doc. #86 at 1, ¶ 9).

**B.     The Process Related to Promotions at the Jefferson County Sheriff's Office**

Sheriff Hale may only promote candidates from a list of qualified individuals sent to him by the Personnel Board of Jefferson County ("PBJC").  (*See* Doc. #63-1 at 3, ¶ 3; *see also* Doc. #86 at 1, ¶ 3).  The list is provided to the Sheriff when a position is open, certifying that all candidates on the list are "qualified" to perform the position that is being sought.  (*See* Doc. #63-1 at 3, ¶ 4; *see also* Doc. #86 at 1, ¶ 4).  Sheriff Hale then appoints a Promotion Review Committee (the

"Committee") that conducts interviews[8] of the candidates sent to them by the PBJC. (*See* Doc. #63-1 at 3-4, ¶ 5; *see also* Doc. #86 at 1, ¶ 5). The Committee reviews the candidates' supervisors' comments and reviews the candidates' personnel file. (*See* Doc. #63-1 at 3-4, ¶ 5; *see also* Doc. #86 at 1, ¶ 5). The Committee then grades the candidates based on their performance during the interview and their past work history.[9] (*See id.*) Sheriff Hale is the final decision maker as to who will be appointed, although he is required choose a candidate from the PBJC list. (*See* Doc. #63-1 at 4, ¶ 6; *see also* Doc. #86 at 1, ¶ 6).

The Sheriff's Manual states that all paperwork associated with a promotion is to be retained by the Sheriff's Internal Affairs office. (*See* Doc. #86 at 5, ¶ 5; *see also* Doc. #93 at 3, ¶ 5). After the Promotional Review Board finishes its work, the documents are given to Internal Affairs.[10] (*See* Doc. #86 at 5, ¶ 6; *see also* Doc. #93 at 3, ¶ 6). Interviews for promotions are recorded on a digital recorder and Sergeant Mike Woods makes a CD or DVD of the interviews and places them in the file. (*See* Doc. #86 at 5, ¶ 7; *see also* Doc. #93 at 3, ¶ 7). The CDs/DVDs are then taken over to the Internal Affairs file room, and Internal Affairs houses the documents relating to the PRB. (*See* Doc. #86 at 5, ¶ 8; *see also* Doc. #93 at 3, ¶ 8). The Sheriff's Department also maintains the PRB files

---

[8] The procedure stated in the Manual is that the Personnel Review Board develops the interview questions to be asked at the interviews *before* the interviews take place. (*See* Doc. #86 at 10, ¶ 49; *see also* Doc. #93 at 7, ¶ 49).

[9] Plaintiffs dispute that the Committee actually follows this process, and points the court to their analysis in the pretext section of its brief. (*See* Doc. #86 at 1, ¶ 6). Argument will be considered in the argument section of the brief. As to this fact, however, Plaintiffs have pointed to no evidence in the Rule 56 record suggesting that the Committee is not supposed to follow the process as set out above.

[10] The following process is recounted from Finley's testimony as to his knowledge of the process as it existed as of 2008. (*See* Doc. #93 at 3, ¶ 6; *see also* Finley Dep. at 9-11).

13

in a locked file room and the files themselves are locked within the room.  (*See* Doc. #86 at 5, ¶ 9; *see also* Doc. #93 at 3, ¶ 9).

C.     **The Process Related to the Contested Promotions**

1.     **The June 5-6, 2004 Lieutenant Positions**

In the Spring of 2004, the JCSO had two open Lieutenant positions, and received a list of eligible employees qualified for those positions from the PBJC.[11]  (*See* Doc. #63-1 at 5, ¶ 11; *see also* Doc. #86 at 1, ¶ 11).  Plaintiffs Moore and Fitts were both on the 2004 certification list, with Moore ranked second and Fitts ranked eleventh.[12]  (Doc. #63, Exh. 12).  Also on the list were Robert Thompson III (ranked first); Kenneth Rich (ranked third); Dennis Berry (ranked fourth); Charles Buchannon (ranked fifth); Thomas Swatek (ranked sixth); Nick Myers (ranked seventh); Jerry Frazier (ranked eighth); Anthony Richardson, Sr. (ranked ninth); and James Vaughn (ranked tenth). (Doc. #63, Exh. 12).

The Committee for the June 2004 Lieutenant promotions consisted of the following persons: former Deputy Chief Carl Johnson (black); Chief Deputy James Atkinson (white); Major Allen Farley (white and the Assistant Sheriff); and Lieutenant Ed McGuffie (white and in charge of Internal Affairs at the time).[13]  (*See* Doc. #63-1 at 5, n. 5; *see also* Doc. #63, Exhs. 8, 9).  In or

_____

[11] This is contrary to Hale's answers to interrogatories, which state that there were no certifications for the year 2004.  (*See* Doc. #86 at 4, ¶ 2; *see also* Doc. #93 at 3, ¶ 2).  However, Plaintiffs do not dispute that the certification list for the June 2004 positions did, and does, in fact exist.  (*See* Doc. #86 at 1, 4 ¶¶ 11, 3).

[12] This fact is in dispute, and so is set forth in the manner most favorable to the Plaintiffs. The defendant contends that the individuals were merely listed and not ranked, and the document itself is ambiguous.  (*See* Doc. #93 at 3, ¶ 4).

[13] Plaintiffs deny that the above-stated individuals constituted the Committee, and contend that Sheriff Hale interviewed the candidates.  (*See* Doc. #86 at 1, 14 ¶¶ 12, 84).  Plaintiffs cite to an

around May 2004, interviews of all candidates, including both Plaintiffs, were conducted.  (*See* Doc.

#63-1 at 5-6, ¶ 12; *see also* Doc. #86 at 1, ¶ 12).  Each candidate was asked the same questions.  (*See*

*id.*)  The positions were awarded to Ken Rich[14] and Tom Swatek,[15] both white males.[16]  (*See* Doc.

---

Order entered by Judge Johnson in a similar case in purported support of that contention.  Of course, the Order entered by Judge Johnson is not evidence in this case.  Plaintiffs also cite to the EEOC position statement, drafted by attorneys and not by Hale, which states that interviews were conducted by Hale, Atkinson, Farley, and Johnson.  (*See* Doc. #86 at 14, ¶ 84).  The EEOC position statement is not evidence in this case and cannot be used to create an issue of fact.  *See Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp.2d 1228, 1236 (M.D. Ala. 2000) (pleadings are not evidence).

[14] Rich had been employed with the JCSO for twenty-eight years at the time of his promotion. (*See* Doc. #63-1 at 7, ¶ 23; *see also* Doc. #86 at 2, ¶ 23).  This was five more years of service with the JCSO than Fitts, and seven more years of service than Moore.  (*See* Doc. #63-1 at 8, ¶ 25; *see also* Doc. #86 at 2, ¶ 25.  Although Plaintiffs deny that Rich had seven more years of service than Moore, they do so without any citation to the record; therefore, their denial is not supported by any evidence, much less substantial evidence.  Rich was granted the promotion, but to say that Rich's employment with the JCSO did not start out well would be an understatement.  Indeed, between 1978 and 1985 (a period that ended nearly twenty years before the promotion decision Rich incurred) the following blemishes appear on his personnel record:

- On October 1, 1981, Rich was demoted due to disciplinary action.  (*See* Doc. #86 at 7, ¶ 24; *see also* Doc. #93 at 6, ¶ 24).
- Lionel Bragan, Chief Correctional Officer, wrote Rich up on October 22, 1976 concerning the importance of reporting promptly for duty.  (*See* Doc. #86 at 7, ¶ 25; *see also* Doc. #93 at 6, ¶ 25).
- On May 2, 1978, a memo was written by Bragan recommending that Rich be terminated for absenteeism and Sheriff Melvin Bailey concurred.  (*See* Doc. #86 at 7, ¶ 26; *see also* Doc. #93 at 6, ¶ 26).
- On July 7, 1978, Rich was suspended for two days for incompetency, being negligent and inefficient in his responsibility of making a search of the personal effects of a person charged with bank robbery by failing to find within the robber's bags tear gas canisters, a radio, and various medications which were jail contraband.  (*See* Doc. #86 at 7, ¶ 27; *see also* Doc. #93 at 6, ¶ 27).
- On April 9, 1981, Rich received a written reprimand for not carrying out specific duties and responsibilities that had been assigned to him and neglect of duty by not getting into service and patrolling at 2130 hours, and still not being in service at 2200 hours.  (*See* Doc. #86 at 7-8, ¶ 28; *see also* Doc. #93 at 6, ¶ 28).
- Rich received an oral reprimand on May 22, 1979, from C.E. Moore about

#63-1 at 6, ¶ 16; *see also* Doc. #86 at 1 ¶ 16; Doc. #86 at 4, ¶ 1).  There is some dispute in the record

> being late.  (*See* Doc. #86 at 8, ¶ 29; *see also* Doc. #93 at 6, ¶ 29).
>
> •   Rich received an oral reprimand on March 28, 1984 for tardiness on numerous occasions and previously having been warned to be on time.  (*See* Doc. #86 at 8, ¶ 30; *see also* Doc. #93 at 6, ¶ 30).
>
> •   On February 19, 1985, Rich received a written warning concerning his abuse of sick time.  (*See* Doc. #86 at 8, ¶ 31; *see also* Doc. #93 at 6, ¶ 31).
>
> •   On September 3, 1985, Rich received a written reprimand for failing to follow policy, rules, and regulations governing the reporting of an accident involving a county vehicle.  (*See* Doc. #86 at 8, ¶ 32; *see also* Doc. #93 at 6, ¶ 32).  Hale stated that this was a serious matter.  (*See* Doc. #86 at 8, ¶ 33; *see also* Doc. #93 at 6, ¶ 33).
>
> •   Rich received a written reprimand on April 2, 1985 for not appearing before the grand jury.  (*See* Doc. #86 at 8, ¶ 34; *see also* Doc. #93 at 6, ¶ 34).
>
> •   After Rich was assigned to the Jefferson County Jail, there was a claim by inmates that Rich had physically abused them, an investigation was done, but Hale could not recall the conclusion of the investigation.  (*See* Doc. #86 at 8, ¶ 36; *see also* Doc. #93 at 6, ¶ 36).
>
> •   Rich was permanently barred by the Alabama Criminal Justice Information Center from accessing either directly or indirectly the Law Enforcement Tactical Systems.  (*See* Doc. #86 at 8-9, ¶ 37; *see also* Doc. #93 at 6, ¶ 37).

Hale stated he could not recall whether he reviewed disciplinary records or not.  (*See* Doc. #86 at 8, ¶¶ 35, 38; *see also* Doc. #93 at 6, ¶¶ 35, 38).  Carl Johnson, who served on the PRB when Rich was selected, stated that he would not have selected Rich because of his disciplinary record with the Sheriff's Department.  (*See* Doc. #86 at 9, ¶ 40; *see also* Doc. #93 at 6, ¶ 40).

[15] Swatek had been employed with the JCSO for thirty-nine years at the time of his promotion.  (*See* Doc. #63-1 at 7, ¶ 20; *see also* Doc. #86 at 2, ¶ 20).  This was seventeen more years of experience than Moore, and sixteen more years than Fitts.  (*See* Doc. #63-1 at 7, ¶ 22; *see also* Doc. #86 at 2, ¶ 22).  Swatek was granted the promotion, despite the following (years old) blemishes on his personnel record:

> •   Swatek received a written reprimand on September 23, 1991.  (*See* Doc. #86 at 9, ¶ 42; *see also* Doc. #93 at 6, ¶ 42).
>
> •   Swatek received a written reprimand on January 26, 1984.  (*See* Doc. #86 at 9, ¶ 43; *see also* Doc. #93 at 6, ¶ 43).

[16] Plaintiffs contend that Hale's selection of Swatek and Rich did not comply with the Consent Decree, which purportedly provides that "as long as we promote in regard to race and gender the percentage that comes out on the cert list, we are in compliance with the Consent Decree." (*See* Doc. #86 at 13, ¶¶ 77, 78).  The portions of the record to cited by Plaintiffs in purported support of that assertion are from the *Buchannon* action.  (*See* Doc. #93 at 11, ¶¶ 77-78).

as to whether Rich and Swatek ranked highest after the Committee interviews.  Committee member James Atkinson recalls that the Committee ranked Rich and Swatek as the top two candidates.  (Doc. #63, Exh. 8 at ¶ 4).  Committee member Allen Farley could not remember who the top two candidates were at the time.  (*See* Doc. #86 at 9, ¶ 45; *see also* Doc. #93 at 7, ¶ 45).  Nor could he recall any skill or ability that Rich or Swatek had over Plaintiffs, but might be able to if he went "back and look[ed] at everything that was laid on the table at the time."  (Farley Dep. at 27).  Committee member Carl Johnson recalls that the Committee recommended Sergeant Anthony Richardson for the position, and further testifies that he would not have chosen Berry for promotion.[17]  (Doc. #68, Exh. 163; *see also* Doc. #86 at 17, ¶ 112; Doc. #93 at 15, ¶ 112).  Johnson also recalls that neither Moore nor Fitts were ranked first or second for the position.[18]  (Doc. #63,

---

[17] According to Moore, "departmental rumor" was that Berry was removed from Acting Captain at the Bessemer jail, and later when he was made Acting Captain at the Birmingham jail, he was removed from that position after an "incident."  (*See* Moore Dep. at 74).

[18] Johnson's recollection as to where Moore and Fitts ranked is one of the issues set forth in Plaintiff's Renewed Motion to Strike Portions of Affidavits.  (*See* Doc. #88 at ¶ 4).  Plaintiffs contend that Defendant is attempting to "[go] through the back door to give the rankings of candidates without the original document," and cite Federal Rule of Evidence 1002.  (*Id.*).  Interestingly, Plaintiffs want to eat their cake and have it, too.  That is, although they make this argument about Johnson's recollection of their rankings, they ignore the objection when it comes to Johnson's recollection about the ranking of Richardson.  (*See* Doc. #86 at 1, ¶ 14, citing Johnson's affidavit to the EEOC dated July 13, 2005).  That contradiction notwithstanding, this portion of Plaintiffs' Renewed Motion to Strike is **DENIED**.  Although it is true that to prove the content of a writing, the original writing is generally required, other evidence of contents is permissible where, *inter alia*, the originals have been lost or destroyed.  FED. R. EVID. 1004.  Plaintiffs make no attempt to argue that the list of rankings was lost or destroyed because of any bad faith.  (*See* Doc. #86 at 1, ¶ 17).

Johnson further stated in his affidavit that he "does not believe that race or gender played any role in Sheriff Hale promoting Ken Rich or Tom Swatek to the position of Lieutenant in 2004 instead of Mr. Fitts, Ms. Moore, or Mr. Buchannon."  (Doc. #63, Exh. 9 at ¶ 6).  However, that statement is another subject of the Renewed Motion to Strike Portions of Affidavits (Doc. #88) and is hereby **STRICKEN**.  Johnson does not purport to have any basis for understanding Sheriff Hale's motivations with regard to the promotion decision at issue.  FED. R. EVID. 701.

Exh. 9 at ¶ 5).

Hale and the Sheriff's Department do not have any audio recordings relating to the promotion of Rich and Swatek,[19] and Hale did not put into writing his reasons for selecting Rich and Swatek for the positions or failing to select Moore and Fitts for the positions, despite a 1982 Consent Decree which requires the Sheriff to state in writing the reasons why each applicant who is certified for promotion is not selected.[20]  (*See* Doc. #86 at 5-6, 13 ¶¶ 12, 13, 14, 79; *see also* Doc. #93 at 4-5, ¶¶ 12, 13, 14, 79).  However, Hale recalls that he had worked with Rich throughout his time in the Sheriff's office and believed Rich had the experience to make a good Lieutenant, although he could not recall specifically what that experience was.[21]  (*See* Doc. #86 at 6, ¶¶ 16, 17; *see also* Doc. #93 at 5, ¶¶ 16, 17).  In fact, Rich had served in the Deputy Chief position – although Hale could not appoint Rich to the Deputy Chief position, he could promote him to Lieutenant and that is what he did.[22]  (*See* Doc. #86 at 6, ¶ 19; *see also* Doc. #93 at 5, ¶ 19).  Similarly, Hale recalls that some of

---

[19]  They do, however, have the personnel records of all candidates as well as the Certificate of Eligibles, which were produced to Plaintiffs.  (*See* Doc. #93 at 4, ¶ 11).  Pursuant to the Consent Decree, Hale is required to keep all materials relating to a promotion.  (*See* Doc. #86 at 5, ¶ 12; *see also* Doc. #93 at 4, ¶ 12).

[20]  However, "[t]his Decree shall not constitute an adjudication or admission by Jefferson County or others signatory to this decree of any violation of law, executive order, or regulations." (Doc. #93 at 4, ¶ 12).  The Consent Decree only requires retention of records for five years.  (*Id.*)

[21]  Hale did not weigh Rich's experience against Fitts' experience.  (*See* Doc. #86 at 6, ¶ 18; *see also* Doc. #93 at 5, ¶ 18).

[22]  The EEOC position statement, drafted by attorneys and not by Hale, does not make reference to promoting Rich to Lieutenant because he could not be appointed as Deputy Chief.  (*See* Doc. #31 at 3, ¶ 21; *see also* Doc. #34 at 4-5, ¶ 21).  The position statement further states as follows:

• 	Rich "has a long distinguished career in law enforcement, not only with the JCSO, but also the City of Birmingham."  (Doc. #86 at 7, ¶ 22; *see also* Doc. #93 at 6, ¶ 22).

the reasons he promoted Swatek were that he knew him, had worked with him in the Sheriff's office, knew at the time of the promotion that Swatek was the longest serving deputy in the Sheriff's office and thought Swatek would make a good Lieutenant. (*See* Doc. #86 at 9, ¶ 41; *see also* Doc. #93 at 6, ¶ 41).

Four months after his promotion, Rich was transferred to the jail as Lieutenant. (*See* Doc. #86 at 10, ¶¶ 55; *see also* Doc. #93 at 9, ¶ 55). Swatek was assigned to Patrol after his promotion, and later worked in the jail.[23]  (*See* Doc. #86 at 11, ¶ 56; *see also* Doc. #93 at 9, ¶¶ 54, 56). However, at the time the promotion decisions were made in Spring 2004, Defendant was unaware as to where the two employees promoted to Lieutenant would ultimately be assigned. (*See* Doc. #93 at 9, ¶ 55).

Plaintiffs filed EEOC charges regarding the filling of the Spring/Summer 2004 positions on November 18, 2004.[24]  (*See* Doc. #86 at 13, ¶ 80; *see also* Doc. #93 at 11, ¶ 80). Moore testified that

---

The EEOC position statement is not evidence in this case and cannot be used to create an issue of fact. *See Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp.2d 1228, 1236 (M.D. Ala. 2000) (pleadings are not evidence).

[23] Moore and Fitts allege that they had more experience working in corrections than either Rich or Swatek. (*See* Doc. #86 at 11, ¶¶ 57, 60; *see also* Doc. #93 at 9, ¶¶ 57, 60).

Moore had taken the National Jailer's Course which is a 30 week course given by the Educational Department in 1983 or 1984. (*See* Doc. #86 at 11, ¶ 61; *see also* Doc. #93 at 8, ¶ 61). In 1986, Moore received a written commendation for searching a radio left for an inmate in the jail for contraband, finding and seizing marijuana, obtaining an arrest warrant, and arresting the person who had brought it to jail. (*See* Doc. #86 at 11, ¶ 62; *see also* Doc. #93 at 9, ¶ 62). Again in June 1994, Moore received a written commendation concerning "the excellent work done" in the internal investigation of the Jail Division. (*See* Doc. #86 at 11, ¶ 63; *see also* Doc. #93 at 9, ¶ 63).

Both Plaintiffs allege that they had to train Swatek and Rich when they were assigned to the jail. As this is a disputed fact, it is stated in the manner most favorable to Plaintiffs. (*See* Doc. #86 at 12, 13 ¶¶ 75, 76; *see also* Doc. #93 at 10, ¶¶ 75, 76).

[24] The EEOC issued cause determinations on both of those charges. (*See* Doc. #86 at 14, ¶ 87; *see also* Doc. #93 at 12, ¶ 87).

she has no evidence or witnesses to support her claims that she was denied this promotion because of her race or gender.  (*See* Doc. #63-1 at 9, ¶ 27; *see also* Doc. #86 at 2, ¶ 26).  She never heard Atkinson, Hale, or Farley make any comments that led her to believe those individuals harbored prejudice against women or African Americans.  (*See* Doc. #63-1 at 9, ¶ 28; *see also* Doc. #86 at 2, ¶ 28).  Sheriff Mike Hale has always treated her professionally and courteously.  (*See* Doc. #63-1 at 9, ¶ 29; *see also* Doc. #86 at 2, ¶ 29).  Similarly, Fitts has never heard Atkinson or Farley say anything that he believed to be discriminatory.  (*See* Doc. #63-1 at 9, ¶ 30; *see also* Doc. #86 at 2, ¶ 30).

### 2.      The June 15, 2005 Lieutenant Positions

In June 2005, two additional Lieutenant positions became available and the PBJC sent the JCSO a list of the eligible candidates who were qualified for the positions.  (*See* Doc. #63-1 at 9, ¶ 31; *see also* Doc. #86 at 2, ¶ 31).  The Promotional Review Committee for the Summer 2005 positions included: Chief Jim Atkinson (white male); Major Allen Farley (white male); Chief Paul Costa (white male); and Lt. Ed McGuffie (white male) of Internal Affairs.  (*See* Doc. #63, Exh. 18; *see also* Doc. #86 at 17, ¶ 109; Doc. #93 at 15, ¶ 109).  Both Plaintiffs interviewed for the available positions, as each were on the Promotional Recommendation List.  (*See* Doc. #63, Exh. 18).  When bonus points[25] were not counted, Richardson ranked first and Berry ranked second; in fact, on a review sheet of all of the candidates for the Summer 2005 positions, file points are crossed out.  (*See*

---

[25] Bonus points, otherwise known as file points, are negatively affected by things like discipline and positively affected by things like complimentary letters, commendations, and medals. (*See* Doc. #86 at 15, ¶ 94; *see also* Doc. #93 at 13-14, ¶ 94).  The Committee concluded that not counting file points would result in a fairer review and ranking of the candidates because the file points were giving some individuals an unfair advantage.  (*See* Doc. #63-1 at 9-10, ¶ 32; *see also* Doc. #86 at 2, ¶ 32).  Plaintiffs dispute that the Committee was authorized to ignore file points for this position.  (*See* Farley Dep. at 34-36).

Doc. #63, Exh. 18; *see also* Doc. #86 at 15, 16 ¶¶ 92, 108; Doc. #93 at 13, 15, ¶¶ 92, 108).

However, the original Promotional Recommendation List, before file points were crossed out, ranked

Bryant first, Moore fourth, Richardson fifth, Berry sixth, and Fitts eighth.[26]  (*See* Doc. #68, Exh. 1;

*see also* Doc. #63-1 at 11, ¶ 37; Doc. #86 at 2, 14, ¶¶ 37, 90; Doc. #93 at 12, ¶ 90).

The 2005 Policy and Procedure Manual states that "[t]he Board shall conduct a pre-interview

assessment of each candidate in the following categories: . . . Commendations/Disciplinary

History."[27]  (*See* Doc. #86 at 15-16, ¶ 99; *see also* Doc. #93 at 15, ¶ 99).  Major Farley, one of the

members of the Promotional Review Committee, testified that he did not remember anything about

personnel file points not being counted for these particular positions, but also noted that he had been

on several promotional review boards, had interviewed the same candidates for more than one

promotion, and that since he has served on the promotional review boards the policies have changed.

(*See* Doc. #86 at 15, ¶ 97; *see also* Doc. #93 at 14-15, ¶ 97).  He stated that all of the criteria counted

in the original Promotional Recommendation List, including file points, were appropriate ones to

consider.  (*See* Doc. #86 at 15, ¶¶ 95, 98; *see also* Doc. #93 at 14-15, ¶¶ 95, 98).  He further testified

that the Committee would follow the process given to it, and that the PRB did not have the authority

to ignore the personnel file point total.  (*See* Doc. #86 at 15, ¶ 96; *see also* Doc. #93 at 14, ¶ 96).

Dennis Berry (white male) and Tony Richardson (black male) were chosen by the PRB for

the June 2005 positions, and Hale concurred with those selections.  (*See* Doc. #28-1 at 5, ¶ 19; *see

also* Doc. #31 at 1, 10, 11 ¶¶ 19, 80, 81 and Doc. #34 at 10, ¶¶ 80, 81).  Hale did not recall whether

---

[26] This is the list that would have been given to Hale.  (*See* Doc. #86 at 15, ¶ 91; *see also* Doc. #93 at 13, ¶ 91).

[27] This was the policy prior to the issuance of the 2006 Policy and Procedure Manual.  (*See* Doc. #93 at 15, ¶ 99).

he considered prior discipline when making the decision to promote Berry, but did recall that Berry had been suspended for one day for failing to turn in a firearm that he had confiscated from a citizen. (*See* Doc. #86 at 16, ¶¶ 102-105; *see also* Doc. #93 at 15, ¶¶ 102-105).

Moore filed a charge of retaliation with the EEOC after Berry and Richardson were promoted to the June 2005 Lieutenant positions, but she withdrew it on April 10, 2006. (*See* Doc. #63-1 at 11, ¶ 38; *see also* Doc. #86 at 3, 17, ¶¶ 38, 113; Doc. #93 at 15, ¶ 113). As noted below, she was thereafter chosen, in July 2005, for promotion to Lieutenant.[28] (*See* Doc. #63-1 at 3, ¶ 1; *see also* Doc. #86 at 17, ¶ 114; Doc. #93 at 15, ¶ 114).

Fitts believed he was more qualified for the June 2005 position than Berry because Berry had never supervised anyone, but Fitts had supervised over 50 people. (*See* Doc. #86 at 17, ¶ 117; *see also* Doc. #93 at 15, ¶ 117). In addition, Fitts believes he was qualified for the position because, in his opinion, he had successfully led an entry team into a jail during a riot and none of the other candidates had successfully dealt with a riot at the jail. (*See* Doc. #86 at 17-18, ¶¶ 118, 119; *see also* Doc. #93 at 15, ¶¶ 118, 119). Fitts filed a charge of discrimination with the EEOC on July 11, 2005. (*See* Doc. #86 at 18, ¶ 121; *see also* Doc. #93 at 16, ¶ 121).

### 3. The July 15, 2005 Lieutenant Position

In July 2005, the JCSO had an open Lieutenant position. (*See* Doc. #63-1 at 11, ¶ 39; *see also* Doc. #86 at 3, ¶ 39). The Committee did not conduct new interviews since it had interviewed candidates for Lieutenant positions just one month earlier. (*See* Doc. #63-1 at 11, ¶ 39; *see also* Doc. #86 at 3, ¶ 39). In sending the Sheriff the top three candidates from the previous set of interviews,

---

[28] There is no evidence that the Committee or Sheriff Hale was aware of Moore having filed an EEOC charge at the time of her promotion, or that her withdrawal if the charge had any effect on her promotion. (*See* Doc. #93 at 15, ¶ 114).

the Committee used the file sheets with the bonus points removed.[29]  (*See* Doc. #63-1 at 11, ¶ 39; *see also* Doc. #86 at 3, ¶ 39).  The candidates were – Bill Franklin (white male), Joey Bryant (white male), and Plaintiff Moore (black female).  (*See* Doc. #63-1 at 11, ¶ 39; *see also* Doc. #86 at 3, ¶ 39).  Even though she ranked third, Sheriff Hale deemed Moore the better candidate and she was promoted to Lieutenant.  (*See* Doc. #63-1 at 11, ¶ 39; *see also* Doc. #86 at 3, ¶ 39).

### 4.    The December 5-6, 2005 Lieutenant Positions

In December 2005, two additional openings for Lieutenant became available.  (*See* Doc. #63-1 at 12, ¶ 42; *see also* Doc. #86 at 3, ¶ 42).  The Promotional Review Committee for the December 2005 Lieutenant positions included: Chief Paul Costa, Deputy Chief Jim Roberson, Chief James Atkinson (white male), and Ed McGuffie (white male).  (*See* Doc. #63-1 at 12, n.9).  The Committee ranked Mark Farley (white male) and Cleveland Moore (black male) as the top two candidates for the open positions, with Fitts ranking eighth.  (*See* Doc. #63-1 at 12, ¶¶ 44, 45; *see also* Doc. #86 at 3, 18, ¶¶ 44, 45, 122; Doc. #93 at 16, ¶ 122).  This ranking counted file points.  (*See* Doc. #86 at 17, ¶ 110; *see also* Doc. #93 at 15, ¶ 110).  Farley and Cleveland Moore were awarded the positions.  (*See* Doc. #63-1 at 13, ¶ 46; *see also* Doc. #86 at 3, 18, ¶¶ 46, 124; Doc. #93 at 16, ¶ 124).  Hale did not state in writing why he failed to choose the other applicants for the Winter 2005 Lieutenant positions.  (*See* Doc. #86 at 18, ¶ 125; *see also* Doc. #93 at 16, ¶ 125).

### 5.    Fitts' May 15, 2007 Written Reprimand

In March 2007, Fitts was reprimanded for improperly allowing a prisoner to be released.  (*See* Doc. #63, Exhs. 30, 31; *see also* Doc. #86 at 18, ¶ 127; Doc. #93 at 16, ¶ 127).  Defendant contends that it was Fitts' responsibility to make sure that the proper release paperwork was in place, and he

---

[29] Fitts ranked sixth on that list.  (*See* Doc. #63-1 at 12, ¶ 41; *see also* Doc. #86 at 3, ¶ 41).

failed to do that for this particular inmate. (Guy Dep. at 111-116). Fitts, on the other hand, contends that the initial error was made by someone other than himself, and that he should not be held responsible for the work of his subordinates. (Fitts Dep. at 164-165; *see also* Doc. #86 at 19, ¶¶ 128, 129, 130, 131). Two other individuals, one of whom was white, also received reprimands for the same incident.[30] (*See* Doc. #63-1 at 13, ¶ 50; *see also* Doc. #86 at 3, ¶ 50).

Fitts contends that other Sergeants who committed similar offenses were not similarly "disciplined." On May 16, 2007, a prisoner was improperly released from jail because of a coding error. (*See* Doc. #86 at 19, ¶¶ 132, 133; *see also* Doc. #93 at 17, ¶¶ 132, 133). According to Fitts, the Sergeant on duty at the time the prisoner was released, Robert Thompson, should have been charged with responsibility for the error made on the computer screen. (*See* Doc. #86 at 19,20 ¶¶ 133, 134, 135, 142; *see also* Doc. #93 at 17, ¶¶ 133, 134, 135, 142).

Fitts believes that the written reprimand was in retaliation for filing EEOC charges in November 2004 and July 2005, and on May 25, 2007 Fitts filed an EEOC charge alleging differential treatment and retaliation.[31] (*See* Doc. #63-1 at 14, ¶ 51; *see also* Doc. #86 at 3, 20, ¶¶ 51, 139; Doc. #93 at 17, ¶ 139).

### 6.    The November 6, 2007 Captain Positions

On August 7, 2007, Hale issued a memorandum regarding Promotion Review Policy Update which created a new policy that only current disciplinary actions would be considered in the file point system, current being defined as within the last five years. (*See* Doc. #86 at 16, ¶ 106; *see also*

---

[30] The reprimand was never placed in Fitts' personnel file and was never sent to Internal Affairs. (*See* Doc. #63-1 at 13, ¶ 49; *see also* Doc. #86 at 3, ¶ 49).

[31] The EEOC made a cause determination on that charge. (*See* Doc. #86 at 21, ¶ 148; *see also* Doc. #93 at 17, ¶ 148).

Doc. #93 at 16, ¶ 106).  In October 2007, there were five vacancies for Captain.  (*See* Doc. #63-1 at 14, ¶ 52; *see also* Doc. #86 at 3, ¶ 52).  The Sheriff was provided a list of five names from the PBJC, all of whom were white males.  (*See id.*)  Plaintiff Moore's name was not on that list.  (*See* Doc. #63-1 at 14, ¶ 54; *see also* Doc. #86 at 3, ¶ 54).  Those named on the List were awarded the positions. (*See* Doc. #63-1 at 14, ¶ 56; *see also* Doc. #86 at 3, ¶ 56).

### 7.    The January 18-21, 2008 Lieutenant Positions

In early 2008, four more vacancies for Lieutenant arose, and the concomitant Certificate of Eligibles named fourteen (14) individuals for those positions, including Fitts.  (*See* Doc. #63-1 at 15, ¶¶ 57-60; *see also* Doc. #86 at 3, ¶¶ 57-60).  The Committee for filling those positions included: Lieutenant Randy Schlitz (white male and the Sheriff's designee), Deputy Chief Jim Roberson (white male), Major Allen Farley (white male), and Captain Al Finley[32] (white male).  (*See* Doc. #63-1 at 15, n. 13; *see also* Doc. #86 at 21, ¶ 146; Doc. #93 at 17, ¶ 146.).  Candidates were ranked by the Committee as follows:[33] Drummond Liddell (white male), Deborah Guy (white female), Charles Graben (white male), Wayne Curry (black male), William Morrow (white male), Roger Holifield (black male), John Verbitski (white male), Robert Thompson (white male), Shirley Moore (white female), Ricky Sharit (white male), Sheila Garrett (white female), Cynthia Mobley (black female), Alan Kilburn (white male), and Plaintiff Fitts.  (*See* Doc. #63-1 at 15, ¶¶ 60, 62; *see also* Doc. #86 at 3, 21 ¶¶ 60, 62, 147; Doc. #93 at 17, ¶ 147).  Committee member Finley could not recall why he

---

[32] Finley did not aid in the development of the interview questions.  (*See* Doc. #86 at 21, ¶ 150; *see also* Doc. #93 at 17, ¶ 150).

[33] Before the interviews, there was no discussion by the Personnel Review Board as to how scoring would work for answers to specific questions.  (*See* Doc. #86 at 21, ¶ 151; *see also* Doc. #393 at 21, ¶ 1151).  As such, some interviewers believe that interview answer ratings are subjective. (*See* Doc. #86 at 21, ¶ 152; *see also* Doc. #93 at 17, ¶ 152).

rated Fitts the way he did on certain interview questions,[34] nor could Finley recall what Fitts could have said differently to result in a higher score.  (*See* Doc. #86 at 21-22, ¶¶ 156, 157; *see also* Doc. #93 at 18, ¶¶ 156, 157).  On Fitts' personnel appearance form, Finley noted that Fitts' brass needed polishing.  (*See* Doc. #86 at 22, ¶ 160; *see also* Doc. #93 at 18, ¶ 160).  He made the same comment on the personnel appearance forms of Guy and Holifield, yet Guy's overall appearance was rated a 9, Holifield's was rated an 8, and Fitts' was rated a 6.[35]  (*See* Doc. #86 at 22, ¶¶ 162, 163; *see also* Doc. #93 at 18, ¶¶ 162, 163). Finley's notes of this interview further indicate that Guy and Fitts gave nearly identical responses to question 5, with Guy rated a 10 and Fitts rated a 9.  (*See* Doc. #86 at 22, ¶ 159; *see also* Doc. #93 at 18, ¶ 159).  Farley's notes from the interviews indicate that as to question 2, which asked what the organization should do to cushion or prevent the effects of stress from the job, the notes from Guy's response say – "pressure from courts, inmates *More stability/fewer changes in jail," and the notes from Fitts' response say: "(1) exercise (2) professional help (3) participative mgt. (4) job rotation (5) giving praise."  (Doc. #86 at 22-23, ¶ 164; *see also* Doc. #93 at 18, ¶ 164).  Guy's response was rated an 8, Fitts' response was rated a 5.  (*See* Doc. #86 at 22-23, ¶ 164; *see also* Doc. #93 at 18, ¶ 164).  Farley's notes indicate that he rated Fitts a 2 on pool question 3, rating Guy a 7 and Liddell an 8 on the same question.  (*See* Doc. #86 at 23, ¶ 165; *see also* Doc. #93 at 18, ¶ 165).  Fitts was rated a 4 by Farley on pool question 4, but Farley could

---

[34]At no point during the interview did Finley tell Fitts that he did not understand what Fitts was saying.  (*See* Doc. #86 at 22, ¶ 158; *see also* Doc. #93 at 18, ¶ 158).

[35] Fitts' personal appearance form rated by Robertson stated that Fitts' brass was polished and rated him a 9, but rated him a 6 on appearance on the performance evaluation guide.  (*See* Doc. #86 at 22, ¶ 161; *see also* Doc. #93 at 18, ¶ 161).  In contrast, Robertson rated Guy and Liddell 10s in appearance, even though the comments for all three individuals were similar – "clean neat," "brass polished," and "uniform pressed."  (Doc. #86 at 23, ¶ 167; *see also* Doc. #93 at 18, ¶ 167).

not recall, at the time of his deposition, why he gave Fitts that rating.  (*See* Doc. #86 at 23, ¶ 166; *see also* Doc. #93 at 18, ¶ 166).

The Sheriff selected the top three candidates to fill the open positions – Liddell,[36] Guy, and Graben, as well as the sixth ranked candidate, Roger Holifield.  (*See* Doc. #63-1 at 15, ¶ 61; *see also* Doc. #86 at 3, 20 ¶¶ 61, 145; Doc. #93 at 17, ¶ 145).  To the best of his recollection, Sheriff Hale has never chosen the lowest-ranked person for promotion.  (*See* Doc. #63-1 at 16, ¶ 63; *see also* Doc. #86 at 4, ¶ 63).  Hale did not put in writing his reasons for selecting these candidates over the others, including Fitts, but others in the Sheriff's Office did.  (*See* Doc. #86 at 21, ¶ 149; *see also* Doc. #93 at 17, ¶ 149).  Audio recordings are missing for the interviews related to these promotions.  (*See* Doc. #86 at 21, ¶ 153; *see also* Doc. #93 at 18, ¶ 153).

### 8.    The February 26, 2008 Captain Position[37]

In February 2008, the JCSO had one vacant Captain position and the PBJC sent the JCSO a list of eligible candidates qualified for the position.  (*See* Doc. #63-1 at 16, ¶ 64; *see also* Doc. #86 at 4, ¶ 64).  The Committee for filling those positions included: Captain Paul Logan (white male), Chief Deputy  (white male), Major Allen Farley (white male), and Captain Al Finley (white male). (*See* Doc. #63-1 at 15, n. 13).  The Committee interviewed and ranked each potential candidate, ranking Plaintiff Moore seventh (of seven candidates) and Cleveland Moore, a black male, fourth.

---

[36] At the time Liddell was selected for this position, Fitts heard "word" that Liddell "was harassing women." (Fitts Dep. at 159).  However, there is no evidence that the Committee or Sheriff Hale was aware of any such allegations at the time of Liddell's promotion.  (*See* Doc. #93 at 16, ¶ 120).  Liddell was, however, later demoted due to a complaint of sexual harassment.  (*See* Doc. #86 at 23, ¶ 168; *see also* Doc. #93 at 18, ¶ 168).

[37] Although this promotion decision was included by Moore in her Joint Submission of Claims and Defenses (Doc. #50), it was not included in either the Complaint or the Amended Complaint.

(*See* Doc. #63-1 at 16, ¶¶ 66, 67; *see also* Doc. #86 at 4, 17 ¶¶ 66-67, 115; Doc. #93 at 15, ¶ 115).

Cleveland Moore was chosen for the position. (*See* Doc. #63-1 at 16, ¶ 66; *see also* Doc. #86 at 4,

¶ 66).

Plaintiff Moore testified that Cleveland Moore had a wide and broad background, and that

it would be reasonable to conclude that he was very qualified and a competent person to be promoted

to Captain. (*See* Doc. #63-1 at 16, ¶ 68; *see also* Doc. #86 at 4, ¶ 68). Plaintiff Moore further

testified that it could be possible to look at the candidates for the February 2008 Captain position and

determine that Cleveland Moore was the best regardless of race or sex. (*See* Moore Dep. at 176).

### 9.     The March 6-7, 2008 Captain Positions

In March 2008, the JCSO had two vacant Captain positions and the PBJC sent the JCSO a

list of eligible employees who were qualified for the position. (*See* Doc. #63-1 at 17, ¶ 71; *see also*

Doc. #63, Exh. 39). After following the promotion process, which included an interview with, and

a ranking of, each candidate, the Committee ranked Ron Eddings (white male) and Dennis Berry

(white male) highest, and Eddings and Berry were promoted to the vacant positions. (*See* Doc. #63-1

at 17, ¶¶ 72, 74; *see also* Doc. #86 at 4, ¶¶ 72, 74). Moore was ranked last – sixth out of six

candidates. (*See* Doc. #63-1 at 17, ¶ 73; *see also* Doc. #86 at 4, ¶ 73). Again, to the best of his

knowledge, Sheriff Hale has never chosen the lowest-ranked person for promotion. (*See* Doc. #63-1

at 18, ¶ 76; *see also* Doc. #86 at 4, ¶ 76).

Plaintiff Moore testified that it would be possible to look at all of the candidates for the

March 2008 Captain positions and conclude that Eddings would make a good Captain. (*See* Moore

Dep. at 178). However, she also argues that she was promoted to Lieutenant before Eddings and had

commanded more staff than Berry or Eddings. (*See* Doc. #86 at 23, ¶ 170; *see also* Doc. #93 at 18,

¶ 170).

This lawsuit raises claims about these nine separate occasions when other qualified individuals were promoted rather than Plaintiffs Moore and Fitts.  After a discussion of Eleventh Amendment immunity principles and their application in this case, each decision is analyzed in turn below.

## IV.    <u>Applicable Substantive Law and Discussion</u>

Defendant alleges that summary judgment is due to be granted on the following grounds: (1) Sheriff Hale has Eleventh Amendment immunity to most of the money damages claims asserted against him in his official capacity; (2) Moore and Fitts cannot maintain a Title VII claim against Sheriff Hale in his individual capacity; (3) many of Moore and Fitts' claims are barred by the statute of limitations; (4) Sheriff Hale is entitled to qualified immunity for Moore and Fitts' retaliation claims asserted under the Fourteenth Amendment; (5) even if Moore and Fitts can establish a prima facie case of discrimination or retaliation, Moore and Fitts' claims still fail because there were legitimate, nondiscriminatory reasons for Sheriff Hale's actions and; (6) Sheriff Hale is entitled to qualified immunity to the claims asserted against him in his individual capacity because he was motivated, at least in part, by lawful considerations.  (*See* Doc. #63-1 at 2).  As explained herein and for various grounds, a review of the Rule 56 file shows that none of Plaintiffs' claims survive summary judgment.

### A.    **Initial Immunity Issues**

The parties agree that in Alabama, a sheriff is a state official and has absolute immunity

under the Eleventh Amendment as to money damages brought against him in his official capacity.[38]

*See Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990); *see also* Doc. #63-1 at 18-19;

Doc. #86 at 25). This is because the action imposes liability on the entity the Sheriff represents, here

Jefferson County, and not on the Sheriff as an individual. *See Brandon v. Holt*, 469 U.S. 464, 471-

72 (1985). However, Plaintiffs do seek injunctive relief under 42 U.S.C. § 1983, including costs

which are ancillary to **prospective** injunctive relief (*see* Doc. #86 at 25), and such relief is generally

cognizable. *See Parker v. Williams*, 862 F.2d 1471, 1475 (11th Cir. 1989). *But* "[i]f the prospective

relief sought is 'measured in terms of a monetary loss resulting from a past breach of a legal duty,'

it is the functional equivalent of money damages and *Ex parte Young* [exception allowing monetary

damages] does not apply." *Florida Ass'n of Rehabilitation Facilities, Inc. v. State of Florida*, 225

F.3d 1208, 1220 (11th Cir. 2000) (quoting *Edelman v. Jordan*, 415 U.S. 651, 669 (1974)). Here, it

is unclear what type of injunctive and declaratory relief Plaintiffs could be afforded that would not

involve the functional equivalent of money damages. That is, the relief Plaintiffs seek – regardless

of their characterization of it – would necessarily involve receiving the promotions, and the

---

[38] The courts have recognized two exceptions to Eleventh Amendment immunity. First, Congress can abrogate eleventh amendment immunity without the state's consent when it acts pursuant to the enforcement provisions of section 5 of the fourteenth amendment. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). Second, a state may waive its immunity expressly through legislative enactment. "[I]n the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). Neither of these exceptions apply in this case. Congress has not abrogated eleventh amendment immunity in section 1983 cases. *Quern v. Jordan*, 440 U.S. 332, 345, 99 S.Ct. 1139, 1147, 59 L.Ed.2d 358 (1979). The state of Alabama has not waived its immunity. *Free v. Granger*, 887 F.2d 1552, 1557 (11th Cir.1989); *Parker v. Williams*, 862 F.2d 1471, 1476 (11th Cir.1989). Indeed, Article 1, section 14 of the Alabama Constitution of 1901 expressly states that "the State of Alabama shall never be made a defendant in any court of law or equity."

corresponding pay raises.  As such, the Sheriff is entitled to absolute immunity on all claims brought against him in his official capacity under 42 U.S.C. § 1983.

The only claims for money damages against the Sheriff in his official capacity that can be supported are those brought under Title VII.[39]  (*See* Doc. #86 at 25, n. 5).   This is because, with regard to Title VII, Congress unequivocally expressed its intent to abrogate the state's Eleventh Amendment sovereign immunity.  *See In re: Employment Discrimination Litigation Against the State of Alabama*, 198 F.3d 1305, 1324 (11th Cir. 1999).

Therefore, after proper application of Eleventh Amendment immunity principles, the following claims remain in this case to be considered:[40]

- Moore's Employment Decision 1 – Title VII race discrimination against Hale in his official capacity for money damages

- Moore's Employment Decision 2 – Title VII sex discrimination against Hale in his official capacity for money damages

- Moore's Employment Decision 3 – §§ 1983, 1981 and the Equal Protection Clause against Hale in his individual capacity for race discrimination

- Moore's Employment Decision 4 – §§ 1983, 1981 and the Equal Protection Clause against Hale in his individual capacity for sex discrimination

- Moore's Employment Decision 5 – §§ 1983, 1981 and the Equal Protection Clause against Hale in his individual capacity for race discrimination

- Moore's Employment Decision 6 – § 1983 and the Equal Protection Clause against Hale in his individual capacity for sex discrimination

---

[39] Plaintiffs concede that they are not seeking damages under Title VII against Sheriff Hale individually.   This is because a Sheriff, in his individual capacity, is not considered an "employer" for purposes of Title VII.  *See Welch v. Laney*, 57 F.3d 1004, 1011 (11th Cir. 1995).

[40] As discussed more fully in Section IV.K., *infra*, Sheriff Hale is also entitled to a qualified immunity defense for those claims brought against him in his individual capacity.

- Moore's Employment Decision 7 – §§ 1983, 1981 against Hale in his individual capacity for retaliation

- Moore's Employment Decision 8 – Title VII race and/or sex discrimination against Hale in his official capacity for money damages

- Moore's Employment Decision 9 – §§ 1983, 1981 and the Equal Protection Clause against Hale in his individual capacity for race and/or sex discrimination

- Moore's Employment Decision 10 – § 1983 and the Equal Protection Clause against Hale in his individual capacity for sex discrimination

- Moore's Employment Decision 11 – §§ 1981 and 1983 against Hale in his individual capacity for retaliation

- Moore's Employment Decision 12 – §§ 1983, 1981 and the Equal Protection Clause against Hale in his individual capacity for race discrimination

- Moore's Employment Decision 13 – §§ 1983, 1981 against Hale in his individual capacity for retaliation

- Moore's Employment Decision 14 – § 1983 and the Equal Protection Clause against Hale in his individual capacity for sex discrimination

- Fitts Employment Decision 1 – Title VII race discrimination, against Hale in his official capacity for money damages

- Fitts Employment Decision 2 – §§ 1983, 1981 and the Equal Protection Clause against Hale in is individual capacity for race discrimination

- Fitts Employment Decision 3 – §§ 1983, 1981 and the Equal Protection Clause against Hale in his individual capacity for race discrimination

- Fitts Employment Decision 4 – §§ 1983, 1981 against Hale in his individual capacity for retaliation

- Fitts Employment Decision 5 – §§ 1983, 1981 and the Equal Protection Clause against Hale in his individual capacity for race discrimination

- Fitts Employment Decision 6 – §§ 1983, 1981 against Hale in his individual capacity for retaliation

- Fitts Employment Decision 7 – §§ 1983, 1981 against Hale in his individual capacity

32

for retaliation

- Fitts Employment Decision 8[41] – Title VII race discrimination against Hale in his official capacity for money damages

- Fitts Employment Decision 9[42] – Title VII retaliation against Hale in his official capacity for money damages

- Fitts Employment Decision 10[43] – §§ 1983, 1981 for race discrimination and retaliation against Hale in his individual capacity

- Fitts Employment Decision 11[44] – §§ 1983, 1981 and Equal Protection against Hale in his individual capacity for race discrimination

- Fitts Employment Decision 12[45] – Title VII race and/or sex discrimination and retaliation, against Hale in his official capacity for money damages

The court now turns to an analysis of each of Plaintiffs' factual claims.

**B.      Claims Related to the June 5-6, 2004 Lieutenant Positions**[46]

In the Spring of 2004, Plaintiffs Moore and Fitts were on a list of eligible candidates for two open Lieutenant positions.  (*See* Doc. #63, Exh. 12).  Although they were provided the opportunity to, and did, interview for the positions, neither of the positions were awarded to them.  Instead, the positions were awarded to Ken Rich and Tom Swatek, both white males.  (*See* Doc. #63-1 at 6, ¶ 16;

---

[41] *See* footnote 72, *infra*.

[42] *See* footnote 72, *infra*.

[43] *See* footnote 72, *infra*.

[44] *See* footnote 72, *infra*.

[45] *See* footnote 72, *infra*.

[46] Because the Complaint and Amended Complaints are unclear as to the nature and extent of the claims pressed in this suit, the court uses the parties' Joint Submission of Claims and Defenses (Doc. #50) filed on March 19, 2010 to navigate the Plaintiffs' claims.

*see also* Doc. #86 at 1, ¶ 16; Doc. #86 at 4, ¶ 1).  Plaintiffs contend that the decision to promote Rich and Swatek, rather than them, was discriminatory.

### 1. Claims for Racial Discrimination under Title VII, 42 U.S.C. § 2000e (Moore Employment Decision 1, Fitts Employment Decision 1)

Although Plaintiffs' brief does not specifically address the issue of Title VII statute of limitations as related to the June 5-6, 2004 Lieutenant positions, (*see* Doc. #86 at 28-29 and n. 7), these claims brought under Title VII as to positions that were filled in 2004 are, without a shred of doubt, untimely.  Moore filed her original charge of discrimination (No. 130-2005-00849) with the EEOC on November 18, 2004 (and an amended charge on December 1, 2004) regarding the June 2004 Lieutenant positions, and received a determination from the EEOC on August 22, 2005.  (*See* Doc. #68, Exhs. 191, 193).  Fitts filed an original charge of discrimination (No. 130-2005-00855) with the EEOC on December 2, 2004 regarding the positions, and received a determination from the EEOC on August 22, 2005.  (*See* Doc. #68, Exhs. 192, 194).  After receiving the notices of right to sue as to their charges, Plaintiffs thereafter had ninety (90) days to file a lawsuit on the grounds of discriminatory denial of the contested promotion.  42 U.S.C. § 2000e-5(f)(1); *Stallworth v. Wells Fargo Armored Servs. Corp.,* 936 F.2d 522, 524 (11th Cir.1991); *see Norris v. Florida Dept. of Health & Rehab. Servs.*, 730 F.2d 682 (11th Cir.1984).  Their failure to do so until February 5, 2008 makes the Title VII claims time-barred.

Defendant's motion for summary judgment, as it relates to Plaintiffs' Title VII race discrimination claims based on the June 2004 Lieutenant positions (Doc. #50, Employment Decision 1 for Moore and Fitts) is due to be granted.[47]

---

[47] Because these claims are so clearly time barred, there is simply no reason for the court to analyze whether they could otherwise survive on the merits.

2.     **Claim for Sex Discrimination under Title VII, 42 U.S.C. § 2000e (Moore Employment Decision 2)**

It is an irrefutable assertion that Title VII claims for sex discrimination are subject to the same statute of limitations as are Title VII claims for race discrimination.  *See generally* 42 U.S.C. § 2000e-2(a)(1) (Title VII makes it unlawful for an employer to discriminate against an employee based on her race, color, religion, sex, or national origin).  Therefore, Defendant's motion for summary judgment, as it relates to Plaintiff Moore's Title VII sex discrimination claim based on the June 2004 Lieutenant positions, is due to be granted.[48]  *See* Section IV.B.1, *supra*.

3.     **Claims for Racial Discrimination Brought under the Equal Protection Clause and 42 U.S.C. § 1981, by and through 42 U.S.C. § 1983[49] (Moore Employment Decision 3, Fitts Employment Decision 2)**

There is no federal statute of limitations for § 1983 claims, and because of that, federal courts are required to borrow state law on the issue.  "[T]he two-year limitations period of Ala. Code § 6-2-38(1) applies to section 1983 actions in Alabama."  *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir.1989).  However, a four-year statute of limitations applies to "civil action[s] arising under an Act of Congress enacted after" December 1, 1990.  *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1338-39 (11th Cir. 2008).

Defendant contends that the Plaintiffs' failure to promote race discrimination claims are subject to § 1981's two year statute of limitations because this cause of action was available before the enactment of the 1991 Act.  (*See* Doc. #93 at 21-22).  Before the 1991 Act, a failure to promote

---

[48] *See* footnote 47, *supra*.

[49] Section 1983 "constitutes the exclusive remedy against state actors for violations of the rights contained in § 1981."  *Butts v. County of Volusia*, 222 F.3d 891, 893 (11th Cir. 2000) (*citing Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731-32 (1989)).

claim could be brought under § 1981 if the promotion rose to the level of an "opportunity for a new and distinct relationship between the employee and the employer." *Patterson v. McLean Credit Union*, 491 U.S. 164, 186-86 (1989) (superseded by 42 U.S.C. § 1981 (1991)). The 1991 Act, which permits claims based on existing contracts, enables a plaintiff to bring a failure to promote claim under § 1981(b) even where the promotion would not amount to a new and distinct relationship. So the key question here is whether the June 5-6, 2004 Lieutenant promotion would have created, as a matter of law, a new and distinct relationship between Sheriff Hale and Plaintiffs. *See Patterson*, 491 U.S. at 166; *see also Wall v. Trust Co. of Georgia*, 946 F.2d 805, 808 (11th Cir. 1991) (holding that for a promotion to encompass a new contract for purposes of § 1981, it must entail a new and distinct employment relationship).

In support of their argument that a new and distinct relationship would have been created, Defendant states that "[t]hese positions were not some mere increase in pay, routine advancement, or simple move-up the career rung. Instead, these promotions would have given Plaintiff[s] command responsibilities, oversight responsibilities, staff responsibilities, assignment responsibilities, and management responsibilities not possessed by lower ranked individuals within the chain of command." (Doc. #93 at 21-22). Moore herself testified that the Lieutenant position is one which supervises numerous subordinates. (Moore Dep. at 102-105). Such a change in management status is important, and the court has no question that denial of such a promotion opportunity would have been a cognizable claim *before* the 1991 amendment to § 1981. *See Hishon v. King & Spalding*, 467 U.S. 69 (1984) (refusal of law firm to accept associate into partnership rises to the level of a new and distinct relationship) and *McCray v. Walmart Stores, Inc.*, 2009 WL 734138, No. 1:06-cv-1123-MEF at *9 (M.D. Ala. 2009) (where plaintiff claimed she was denied a

promotion to department manager, court held that such a promotion rises to the level of a new and distinct relationship); *contra Wall*, 946 F.2d at 808 (the change would not have elevated Plaintiff to a management position).  Therefore, the claims brought by Plaintiffs for failure to promote under § 1983 were not the type of legal claim that arose under a congressional act enacted after December 1, 1990.  It follows that the two year (not the four year) statute of limitations applies to Plaintiffs' claims and, as such, they are barred by the applicable two year statute of limitations.  *See Hithon v. Tyson Foods, Inc.*, 144 Fed. Appx. 795 (11th Cir. 2005) (holding that the applicable statute of limitations period for a failure to promote claim is two years).  Defendant's motion for summary judgment as to these claims is due to be granted.[50]

Plaintiffs make no argument that their Equal Protection claim for the June 5-6, 2004 Lieutenant positions can survive analysis on the statute of limitations question (*see* Doc. #86 at 26-29), and for good reason.  The Supreme Court has made crystal clear that the proper statute of limitations for § 1983 actions is the forum state's general or residual statute of limitations for personal injury actions.  *See Owens v. Okure*, 488 U.S. 235 (1989).  In Alabama, the statute of limitations for § 1983 claims is two years.  *Lufkin v. McCallum*, 956 F.2d 1104 , 1007 n. 2 (11th Cir. 1992).  Plaintiffs filed this lawsuit on February 5, 2008, almost four years after the June 2004 decision not to promote them to Lieutenant was made.  Therefore, the Equal Protection claims based on the June 2004 Lieutenant positions are untimely, and Defendant's motion for summary judgment as to those claims are due to be granted.[51]

---

[50] *See* footnote 47, *supra*.

[51] *See* footnote 47, *supra*.

4.      **Claim for Sex Discrimination[52] Brought under the Equal Protection Clause and 42 U.S.C. § 1981, by and through 42 U.S.C. § 1983[53] (Moore Employment Decision 4)**

The same statute of limitations analysis applies to bar Plaintiff Moore's Equal Protection and 42 U.S.C. § 1981 sex discrimination claims for the June 2004 Lieutenant positions as did to the race discrimination claims discussed above.  *See* Section IV.B.3, *supra*.  Therefore, Defendant's motion for summary judgment as it relates to this claim is due to be granted.[54]

C.      **Claims Related to the June 15, 2005 Lieutenant Positions**

In the Summer of 2005, Plaintiff Moore and Plaintiff Fitts were on a list of eligible candidates for two additional Lieutenant positions.  (*See* Doc. #63, Exh. 18).  Although they were provided the opportunity to, and did, interview for the positions, neither of them were awarded a promotion.   Instead, the positions were awarded to Dennis Berry, a white male, and Tony Richardson, a black male.  (*See* Doc. #63-1 at 11, ¶ 36; *see also* Doc. #86 at 2, 14, ¶¶ 36, 88; Doc. #93 at 12, ¶ 88).  Plaintiffs contend that the decision to promote Berry and Richardson, instead of themselves, to the open positions was discriminatory.

1.      **Claims for Racial Discrimination Brought under the Equal Protection Clause and 42 U.S.C. § 1981, by and through 42 U.S.C. § 1983[55] (Moore Employment Decision 5, Fitts Employment Decision 3)**

Plaintiffs claim that they were discriminatorily denied promotion to the position of Lieutenant

---

[52] The court recognizes that no claim for sex discrimination can lie under § 1981 and that this claim more properly could be stated under Title VII.  Nevertheless, the claim fails for the same reasons as the § 1981 race claim.

[53] *See* footnote 49, *supra*.

[54] *See* footnote 47, *supra*.

[55] *See* footnote 49, *supra*.

in June 2005 because of their race, African American.[56]   These claims, however, are due to be dismissed because they are barred by the applicable two year statute of limitations.   *See Lufkin v. McCallum*, 956 F.2d 1104 , 1007 n. 2 (11th Cir. 1992); *Hithon v. Tyson Foods, Inc.*, 144 Fed. Appx. 795 (11th Cir. 2005) (holding that the applicable statute of limitations period for a failure to promote claim is two years); *see also* Section IV.B.3., *supra*.   This lawsuit was filed on February 5, 2008, more than two and a half years after the contested promotion decision was made.   Therefore, Defendant's motion for summary judgment as to Plaintiffs' Equal Protection and § 1981 race claims based on the June 5-6, 2005 Lieutenant positions are due to be granted.[57]

### 2.      Claim for Sex Discrimination[58] Brought under the Equal Protection Clause and 42 U.S.C. § 1981, By and Through 42 U.S.C. § 1983[59] (Moore Employment Decision 6)

Plaintiff Moore claims that she was discriminatorily denied promotion to the position of Lieutenant in June 2005 because of her gender, female.  Like the claims set forth in Section IV.C.1., *supra*, however, this one is also due to be dismissed as barred by the applicable two year statute of limitations.   *See Lufkin*, 956 F.2d at 1007 n. 2; *Hithon*, 144 Fed. Appx. at 795.  Defendant's motion for summary judgment, as it relates to Plaintiff Moore's Equal Protection and § 1981 sex discrimination claims on the basis of the June 2005 Lieutenant positions, is to be granted.[60]

---

[56] Notably, one of the contested June 2005 positions was awarded to a black male.  (*See* Doc. #63-1 at 11, ¶ 36; *see also* Doc. #86 at 2, 14, ¶¶ 36, 88; Doc. #93 at 12, ¶ 88).

[57] *See* footnote 47, *supra*.

[58] *See* footnote 52, *supra*.

[59] *See* footnote 49, *supra*.

[60] *See* footnote 47, *supra*.

3.      **Claims for Retaliation under 42 U.S.C. § 1981, by and through 42 U.S.C. § 1983[61] (Moore Employment Decision 7, Fitts Employment Decision 4)**

Unlike their claims for racially or sexually discriminatory failure to promote, Plaintiffs' claims for retaliation are subject to a four-year statute of limitations.  This is because a retaliation cause of action under § 1981 was not cognizable until the 1991 amendments to § 1981.  *See Baker*, 531 F.3d at 1338.  Because this case was filed on February 5, 2008, less than four years after the contested employment decision, Plaintiffs' retaliation claims are not barred by the statute of limitations.  However, for the reasons stated below, while their claims are not late, but they are not winners either.

In analyzing the merits of these claims, the court must apply the familiar *McDonnell Douglas* burden shifting analysis.[62]  *See Baker v. Russell Corp.*, Slip Copy, 2010 WL 1434404, No. 09-14930 at *2 (11th Cir. April 12, 2010) (citing *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009), *cert. denied*, – S. Ct. – (U.S. Feb. 22, 2010) ("We apply the *McDonnell Douglas* framework when analyzing claims of retaliation brought under both Title VII and § 1981.")).  Anti-retaliation provisions prohibit an employer from retaliating against an employee "because [she] has opposed any practice made an unlawful employment practice," including discrimination on the basis of race. 42 U.S.C. § 2000e-3(a).  The goal of these provisions is to "prevent[ ] an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees," including freedom from race discrimination.  *Burlington N. & Santa Fe R.R. Co. v.*

---

[61] Plaintiff does not make a claim for retaliation under the Equal Protection Clause.  (*See* Doc. #86 at 29).  *See also* footnote 49, *supra*.

[62]  Plaintiffs concede that this is a circumstantial evidence case.  (*See* Doc. #86 at 29) (analyzing the claims under the framework for a circumstantial evidence case).

*White*, 548 U.S. 53 (2006).  "An employee need not prove the underlying claim of discrimination for the retaliation claim to succeed."  *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir.1999) (citations omitted).

To establish a prima facie case of retaliation, Plaintiffs must show: (1) that they engaged in protected activity or expression; (2) that they suffered an adverse employment action; and (3) that the adverse employment action was causally connected to the protected conduct.  *See Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998); *see also Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir. 1989).  If Plaintiffs are able to advance a prima facie case of retaliation, the burden then shifts in accordance with *McDonnell Douglas* to the Sheriff to articulate legitimate, non-discriminatory reasons for the alleged retaliatory acts.  *See Holifield*, 115 F.3d at 1566).  Upon an employer's successful articulation, for a claim to survive summary judgment, a Plaintiff must demonstrate that the employer's proffered explanation operates as a pretextual ruse for retaliation.  *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999) (citation and internal quotation omitted).

Defendant Hale's summary judgment brief appears to assume, without analyzing, that Plaintiffs have established a prima facie case of retaliation as to these retaliation claims.  (*See* Doc. #63-1 at 30) ("Assuming, for the purposes of the Second Motion for Summary Judgment only, that Moore and Fitts have stated a *prima facie* case of discrimination …").  But Plaintiffs quite clearly have made absolutely no attempt to set out a prima facie case, nor could they even if they tried.  (*See* Doc. #86 at 24-64).  There is simply nothing in the record from which Plaintiffs can establish that the adverse employment decisions were causally related to the statutorily protected activity.  Moore filed an original charge of discrimination (No. 130-2005-00849) with the EEOC on November 18,

41

2004 (and an amended charge on December 1, 2004) regarding the June 2004 promotion decisions; Fitts did the same but did not file an amendment.  (*See* Doc. #68, Exhs. 191, 192, 193; *see also* Doc. #86 at 45-46). More than *seven months later*, the decision was made not to promote either of them to one of the available July 2005 Lieutenant positions.   There is, therefore, no close temporal proximity between the events.  *Breeden*, 532 U.S. at 273-74 (relying on cases that held a three month period and a four month period were insufficient to support causation to hold that the 20 month period before the court was also insufficient); *see also DeLong v. Best Buy Co., Inc.*, 211 Fed. Appx. 856, 2006 WL 3623697, No. 06-11853 at * 2 (11th Cir. Dec. 13, 2006) (holding that eight months between the protected activity and the adverse action is not "very close" and noting "the cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'") and *Keith v. MGA, Inc.*, 211 Fed. Appx. 824, 2006 WL 3228073, No. 06-12803 at *3 (11th Cir. Nov. 8, 2006) (noting that plaintiff was fired four months after engaging in protected activity and that, in the absence of other evidence tending to show causation, the four month gap was not "very close").  Further demonstrating the lack of causal connection is this – there is nothing in the record to even suggest that the Committee members (who purportedly manipulated file points to preselect their desired candidate)[63] had *any* knowledge that Plaintiffs had, *seven months earlier*, filed charges of discrimination with the EEOC. "To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct ...."  *Shannon v. BellSouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002).

---

[63] There is no allegation that Sheriff Hale himself manipulated the file points, or that he directed the Committee to do so in an effort to retaliate against Plaintiff Moore.

That requirement is as tautological as it is settled: "[a] decision maker cannot have been motivated to retaliate by something unknown to him." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).

No presumption of discrimination can be created where Plaintiffs have not established a prima facie case of discrimination. *See Burdine*, 450 U.S. at 254 ("Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee."); *see also McDonnell Douglas*, 411 U.S. at 802 ("The effect of the presumption of discrimination created by establishment of the prima facie case is to shift to the employer the burden of producing legitimate, nondiscriminatory reasons for the challenged employment action."). Therefore, Defendant's motion for summary judgment, as it relates to Plaintiffs' 42 U.S.C. § 1981 claims, brought by and through 42 U.S.C. § 1983 for retaliation in the promotion decision made on June 15, 2005, is due to be granted.[64]

---

[64] Of course, even assuming, *arguendo*, that Plaintiffs could successfully establish a prima facie case for the retaliation claims brought as to the June 15, 2005 promotion decisions, summary judgment would nevertheless be appropriate. Sheriff Hale articulates that Dennis Berry, a white male, and Tony Richardson, a black male, were selected for the June 2005 Lieutenant positions because the Committee interviewed and ranked all candidates, and thereafter recommended the two top performers, Berry and Richardson, for promotion. (*See* Doc. #63-1 at 30). These are legitimate, non-discriminatory reasons to select Berry and Richardson over Plaintiffs for the promotions. The subjectivity of the articulated reasons does not make them any less legitimate. *See Chapman*, 229 F.3d at 1033-35 ("Subjective evaluations of a job candidate are often critical to the decisionmaking process . . ."). Thus, the presumption of discrimination is eliminated (assuming one was created in the first place – and to be clear it was not), and the burden shifts to Plaintiffs to come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated reasons were pretextual for retaliation. *See Chapman*, 229 F.3d at 1028. Counsel for Plaintiffs have the following theories on pretext: (1) file points were not counted for the position, contrary to the Sheriff's Policy Manual, thus allowing preselection to take place; (2) Moore was quickly selected for a promotion after she filed an EEOC charge regarding her failure to be promoted to the June 2005 position; (3) Fitts and Moore were more qualified for the positions than those selected; and (4) the rating system is subjective. (*See* Doc. #86 at 43-45).
    Plaintiffs' pretext arguments fall short of the mark for several reasons. Even assuming file

### D.      Claims Related to the July 15, 2005 Lieutenant Positions[65]

In July 2005, there was yet another opening for Lieutenant in the Sheriff's Office.  (*See* Doc.

#63-1 at 11, ¶ 39; *see also* Doc. #86 at 3, ¶ 39).  This time Fitts was not chosen for the promotion,

but Plaintiff Moore was chosen. (*See* Doc. #63-1 at 11, ¶ 39; *see also* Doc. #86 at 3, ¶ 39).  Fitts

claims that the failure to select him for promotion in July 2005 constituted race discrimination and

retaliation.

### 1.      Claim for Race Discrimination under the Equal Protection Clause and 42 U.S.C. § 1981 Race Claims, By and Through 42 U.S.C. § 1983[66] (Fitts Employment Decision 5)

In Section IV.B.3 *supra*, the court explains that failure to promote claims asserted under 42

U.S.C. § 1981 are subject to a two year statute of limitations where such promotions rise to the level

of an opportunity for a new and distinct relationship between the employee and the employer.  The

---

points had been counted, neither Moore nor Fitts would have ranked first or second for promotion.
Moore was promoted *just one month after this decision* by a Committee using the same ranking
system she tries to discredit here.  And the system for promotions, while necessarily including some
element of subjectivity, is premised first on a wholly objective list of individuals qualified for the
job.  There is no question that Moore and Fitts were qualified for the promotions they did not
received; the issue is that they were not the best qualified as determined by the Committee.  There
is absolutely nothing in the record to support a finding that Moore and Fitts were more qualified than
the others on the PBJC list.  Finally there is no Rule 56 record support for the argument that Moore
was promoted <u>because</u> she withdrew her charge.

[65] Plaintiff Fitts' Response Brief in Opposition to the Second Summary Judgment seems to
be making an argument only that Fitts is entitled to injunctive relief as to this position.  "Had Moore
earlier been promoted and Fitts still not promoted or placed in his rightful place as part of the
equitable relief for being denied those positions, then in that event, Fitts should have received this
promotion."  (Doc. #86 at 46).  Were these claims not barred by the statute of limitations and for
failure to rebut articulated legitimate, nondiscriminatory reasons, they would nevertheless be barred
because there has been no previous discrimination – that is, no previous wrong for this court to right.
*See* Section IV.G.1., *infra.*

[66] *See* footnote 49, *supra*.

same two year statute of limitations applies to Equal Protection claims brought in the state of Alabama.  Fitts claims that he was discriminatorily denied promotion on July 15, 2005, more than two years before this lawsuit was filed on February 5, 2008.  Therefore, consideration of the merits of his claim is barred by the statute of limitations, and Defendant's motion for summary judgment, as it relates to Fitts' 42 U.S.C. § 1981 and Equal Protection claims (brought by and through 42 U.S.C. § 1983 for retaliation as to the July 2005 Lieutenant positions) is due to be granted.[67]

## 2.    Claim for Retaliation under 42 U.S.C. § 1981, by and through 42 U.S.C. § 1983[68] (Fitts Employment Decision 6)

Unlike Plaintiff Fitts' claim for failure to promote, his claim for retaliation regarding the July 2005 promotion decision is subject to a four year statute of limitations.  *See Baker*, 531 F.3d at 1338.  Because this case was filed on February 5, 2008, less than four years after the contested employment decision, it is not barred by the statute of limitations.

The only the clue the court has been given as to the basis for this retaliation claim rests in the Joint Submission of Claims and Defenses (Doc. #50), which states "the denial of this promotion was in retaliation for Fitts['] opposition to race discrimination and engaging in protected activity."  (Doc. #50 at 4, Fitts Employment Decision 6).  Presumably, then, Fitts believes that he was denied promotion to Lieutenant in July 2005 because he filed a charge of discrimination with the EEOC on

---

[67] *See* footnote 47, *supra*.  Even were this claim not barred by the statute of limitations, Fitts could not establish a prima facie case of race discrimination.  Co-Plaintiff Moore, also African American, was awarded this position.  *See Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001) (noting that an element of the prima facie case is "that other equally or less qualified employees who were not members of the protected class were promoted.").

[68] *See* footnote 49, *supra*.

July 11, 2005.[69]  (*See* Doc. #86 at 18, ¶ 21; *see also* Doc. #93 at 16, ¶ 121).

Interestingly, the Committee did not conduct new interviews for this position.  Instead, the Committee sent the Sheriff the rankings that had been compiled one month earlier for the June 2005 Lieutenant positions – the next three highest ranked candidates on the list were all ranked within a half-point range.  (*See* Doc. #63-1 at 11, ¶ 39; *see also* Doc. #86 at 3, ¶ 39).  Unfortunately for Fitts, he was not one of the next three highest-ranked candidates – Fitts was ranked sixth on the original list.  (*See* Doc. #93 at 31, n. 15).

It is legally and factually impossible to say that the Committee rankings, completed in *June* 2005, could have been done in retaliation for a charge filed in *July* 2005 **or** that Sheriff Hale retaliated against Fitts for filing an EEOC charge when Fitts was not even on the list given to him by the Committee.  (*See* Doc. #63-1 at 11, ¶ 39; *see also* Doc. #86 at 3, ¶ 39).  *See Shannon*, 292 F.3d at 716; *see also Burdine*, 450 U.S. at 254.  Even were such a turn of events even possible, Fitts has done nothing to meet head-on and rebut the Sheriff's articulated legitimate, nondiscriminatory reasons for promoting Moore instead of Fitts to this position.  *See Chapman*, 229 F.3d at 1030.  To the contrary, the record is replete with evidence as to Moore's qualifications for the Lieutenant position.[70]  (*See* Doc. #86 at 11, ¶¶ 57, 60, 61, 62, 63).  Defendant's Motion for Summary Judgment,

---

[69] If Fitts instead intended to base this retaliation claim on the charge of discrimination he filed with the EEOC in November 2004, such claim would clearly fail for lack of any causal connection between protected activity and an adverse employment action.  *See* Section IV.C.3., *supra*.

[70] Of course, this promotion went to Moore, who had previously filed an EEOC charge.  *See Gary v. Hale*, 212 Fed. Appx. 952, 960 (11th Cir. 2007) (noting that the fact that promotions had been given to JCSO employees who had previously filed EEOC charges "further weakens [the] claim that the department used its ostensibly neutral promotion system as a ruse to act against those who complained of discrimination.").

46

as it relates to Plaintiff Fitts' 42 U.S.C. § 1981 claim, brought by and through 42 U.S.C. § 1983 for retaliation in the promotion decision made on July 15, 2005, is due to be granted.

E.   **Fitts' Claim for Retaliation as to the December 5-6, 2005 Lieutenant Positions Brought under 42 U.S.C. § 1981, By and Through 42 U.S.C. § 1983[71] (Fitts Employment Decision 7)**

Fitts claims that he was retaliated against when he was not awarded a Lieutenant position in December 2005.  As grounds therefor, Fitts references the charge of discrimination he filed with the EEOC on July 11, 2005.  (*See* Doc. #50 at 4-5).  While the EEOC charge does constitute statutorily protected expression, that is as far as he can carry any assertion that he has established a prima facie case as to this claim.  As already noted, an almost four month delay, without more, is insufficient to establish a causal relationship.  Further demonstrating the lack of causal connection is that there is nothing in the record to even suggest that the Committee members (who purportedly used a subjective rating system to discriminate) had *any* knowledge that Fitts had, almost four months earlier, filed a charge of discrimination with the EEOC.  *See Shannon*, 292 F.3d at 716; *Brungart*, 231 F.3d at 799.

But even assuming Fitts could establish a prima facie case of retaliation as to this position (and again, to be clear, he cannot), he has done nothing to meet head-on and rebut the Sheriff's articulated legitimate, nondiscriminatory reasons for promoting Cleveland Moore and Mark Farley in lieu of Fitts.  *See Chapman*, 229 F.3d at 1030.  The Committee interviewed the candidates using the same questions for each candidate and each committee member independently ranked the candidates upon interview completion.  After pooling those rankings, Cleveland Moore and Mark Farley ranked the highest.  Fitts ranked eighth out of eleven candidates, lower than two other black

---

[71] *See* footnote 49, *supra*.

candidates and higher than a white candidate. (Doc. #63, Exh. 34). The essence of Fitts' argument is that this court should sit as a super-personnel board and re-examine the Committee's interview and rating system. (*See* Doc. #86 at 47). But that would be inappropriate, even if a presumption of discrimination been created. *See Chapman,* 229 F.3d at 1030 (quoting *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991)). *See also* Section IV.H.1., *infra* for further discussion on the subjectivity argument.

Defendant's motion for summary judgment, as it relates to Plaintiff Fitts' 42 U.S.C. § 1981 retaliation claim (brought by and through 42 U.S.C. § 1983 for retaliation in the promotion decision made on December 5-6, 2005) is due to be granted.

###### F.    Claims Related to the Write-Up Fitts Received on May 15, 2007

In May 2007, Fitts was written-up for improperly allowing a prisoner to be released. (*See* Doc. #63, Exhs. 30, 31). Fitts contends that the write-up was discriminatory because "Sergeant Robert Thompson, white, who signed the release slip for inmate GJ who was improperly released or Lieutenant Al Finley (white), who also signed the paperwork did not have disciplinary action taken against them." (Doc. #50 at 5-7, Fitts Employment Decisions 8, 9, 10, 11).[72]

---

[72] In their Joint Submission of Claims and Defenses (Doc. #50), the parties seem to have inadvertently labeled two contested employment decisions as "Fitts Employment Decision 8." (*See* Doc. #50 at 4-5). Therefore, for purposes of clarification, the following numbers will apply heretofore to Fitts' contested employment decisions:

- Employment Decision 8 – May 15, 2007, Statute: Title VII, 42 U.S.C. § 2000e et seq. as amended (race)
- Employment Decision 9 – May 15, 2007, Statute: Title VII, 42 U.S.C. § 2000e et seq. as amended (retaliation)
- Employment Decision 10 – May 15, 2007, Statute: 42 U.S.C. §§ 1983 and 1981 (race and retaliation)
- Employment Decision 11 – May 15, 2–7, Statute: 42 U.S.C. §§ 1983 and 1981 and the Equal Protection Clause of the United States Constitution (race)

1.     **Claim for Race Discrimination under Title VII, 42 U.S.C. § 2000e (Fitts Employment Decision 8)**[73]

Because this is a circumstantial evidence case, Fitts has the initial burden of establishing a prima facie case of discrimination under the *McDonnell Douglas* and *Burdine* framework. *See id.* at 1527-28.  The methods of presenting a prima facie case, as well as the exact elements of the case, are not fixed; rather they are flexible and depend to a large degree upon the facts of the particular situation.  *See, e.g., Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984); *Lincoln v. Board of Regents of Univ. Sys.*, 697 F.2d 928, 937 (11th Cir. 1983).  In general, a plaintiff establishes a prima facie case of disparate treatment employment discrimination by showing that he was a qualified member of a protected class and was subjected to an adverse employment action but that other similarly situated employees outside the plaintiff's class were treated dissimilarly. *McDonnell Douglas*, 411 U.S. at 802 (hiring); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (discipline); *see also Nix*, 738 F.2d at 1185 (discipline); *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1074 (5th Cir. 1981) (wages).

Once the plaintiff has established a prima facie case and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  *Combs*, 106 F.3d at 1528.  The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Burdine,* 450 U.S. at 254-55; *see Chapman*, 229 F.3d at 1024.  If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination is dispersed and the burden of

---

•     Employment Decision 12 – January 18, 19, 20, 21, 2008, Statute: Title VII, 42 U.S.C. § 2000e et seq. as amended (race, retaliation, and/or sex)

[73] *See* footnote 64, *supra*.

production shifts back to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination. When a defendant articulates multiple, reasonable, legitimate and nondiscriminatory reasons, plaintiff must rebut each of defendant's proffered reasons. *Chapman*, 229 F.3d at 1024-25. Although the prima facie case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the prima facie case. *Combs*, 106 F.3d at 1528.

Despite this shifting of the burden of production between the plaintiff and the defendant under the *McDonnell Douglas* and *Burdine* framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253. Given that the ultimate burden of persuasion always lies with the employee, a plaintiff may defeat a summary judgment by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination. *Reeves v. Sanderson Plumbing Prods. Inc.*, 120 S. Ct. 2097, 2108-09 (2000) (pointing out that the production of the necessary sufficient evidence by plaintiff will not always prevent the employer from prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other properly considered evidence that supports the employer's case are among other factors to take into account in evaluating a Rule 50 motion); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993); *Abel v. Dubberly*, 210 F.3d 1334, 1339 (11th Cir. 2000); *Alexander v. Fulton County*, 207 F.3d 1303, 1336 (11th Cir. 2000); *Combs*, 106 F.3d at 1529-38 (interpreting *Hicks* and the post-*Hicks* case law); *Hairston v. Gainesville Sun*

*Publ'g Co.*, 9 F.3d 913, 920-21 (11th Cir. 1993).

Fitts' claim is that the May 2007 write-up was discriminatory.  As potential comparators, he points to Al Finley, the lieutenant on the shift, and Sergeant Robert Thompson, both white males, who were not written up for the same infraction.  (*See* Doc. #86 at 48).  While he has arguably – but murkily –  explained the involvement of Finley and Thompson in the incident, Fitts fails to explain how those two were similarly situated,"in all relevant respects," to himself.  In fact, Fitts admits that "the employees who made the errors in the system by ignoring the paperwork and preparing the release orders" were in fact reprimanded in the same manner as he was.  (Doc. #86 at 50).  *See Wilson*, 376 F.3d 1079, 1092 (11th Cir. 2004) ("If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present."); *see also Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989) (holding that in order to show discriminatory discipline, plaintiff must show either that he did not violate the work rule[74]

---

[74] Neither party mentions, although it is the law in the Eleventh Circuit, that another way for a plaintiff in a disparate treatment work rule case to establish the prima facie case is to show that he did not violate the work rule.  *See Gerwens*, 874 F.2d at 1539; *see also Marshall v. Mayor and Alderman of City of Savannah, Ga.*, Slip Copy, 2010 WL 537852, No. 09-13444 at *5 (11th Cir. Feb. 17, 2010).  The court need not determine the validity of such an assertion here for two reasons.  First, Plaintiff did not raise it as a method for proving his prima facie case.  *See Smith v. Sunbelt Rentals, Inc.*, 356 Fed. Appx. 272, 278 (11th Cir. 2009) (finding that because the plaintiff raised his argument that he did not violate the work rule *only* with regard to pretext and not with regard to the prima facie case, the district court correctly only considered comparator evidence).  Second, the Sheriff has articulated a legitimate, non-discriminatory reason for writing up Fitts – its investigation concluded that he had improperly released an inmate.   The law is clear that, even if a Title VII claimant did not in fact commit the violation with which he is charged, an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation.  *See Chaney v. Southern Railway Co.*, 847 F.2d 718, 723-24 (11th Cir.1988) (focusing disparate treatment inquiry on whether employer had "reason to believe" employee was trying to cover up on-duty marijuana use); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1186 (11th Cir.1984) (" '[I]f an employer applies a rule differently to people it believes are differently situated, no discriminatory intent has been shown' ") (quoting *Chescheir v. Liberty Mutual Insurance Co.*, 713 F.2d 1142, 1148 (5th Cir.1983)); *Turner v. Texas*

or "that he engaged in misconduct *similar* to that of a person outside the protected class, and that the disciplinary measures enforced against him were more severe than those enforced against other persons who engaged in *similar* misconduct"); *Jones*, 137 F.3d at 1311 ("If Plaintiff fails to identify similarly situated, nonminority employees who were treated more favorably, her case must fail because the burden is on her to establish her prima facie case.").

But even assuming Fitts had established a prima facie case of disparate treatment, his claim would nevertheless fail to survive summary judgment. Sheriff Hale has articulated that Fitts violated the work rule by improperly releasing a prisoner. Courts have consistently held violations of work rules to be legitimate, non-discriminatory reasons for adverse actions. *See Burdine*, 450 U.S. at 256; *see also Douglas v. DeKalb County, GA*, 308 Fed. Appx. 396, 400 (11th Cir. 2009); *Brillinger v. City of Lake Worth*, 317 Fed. Appx. 871, 877 (11th Cir. 2008). Therefore, the Sheriff has met his burden of articulation, the presumption of discrimination is destroyed, (assuming one had been created in the first place), and the burden shifts back to Fitts to show by a preponderance of the evidence that *race* discrimination motivated the decision to write up his work rule violation. *See Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir. 2000).

Pretext is established when a plaintiff "present[s] concrete evidence in the form of specific facts" showing that the defendant's proffered reason was pretextual. *See Bryant v. Jones,* 575 F.3d 1281, 1308 (11th Cir. 2009). "[The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. State of Ala. State Tenure*

---

*Instruments, Inc.*, 555 F.2d 1251, 1256 (5th Cir.1977) ("Even if [employer] wrongly believed that [Title VII claimant] violated this policy, if [employer] acted on this belief it was not guilty of racial discrimination").

*Comm'n*, 405 F.3d 1276, 1289 (11th Cir.2005) (quotation marks omitted); *see also Vessels v. Atlanta Indep. Sch. Sys.,* 408 F.3d 763, 771 (11th Cir.2005) (A plaintiff's evidence of pretext "must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence."). When the employer provides a reason "that might motivate a reasonable employer, an employee must meet that reason head on and rebut it...." *Chapman*, 229 F.3d at 1030. Conclusory allegations and assertions of discrimination are insufficient. *See Bryant,* 575 F.3d at 1308. The problem for Fitts is that he makes *no* effort to explain why the reasons Defendant says he was issued the write-up are a pretext for race discrimination.[75] (*See* Doc. #86 at 48-55). Therefore, Defendant's motion for summary judgment, as it relates to Fitts' claim for Title VII race discrimination with regard to the May 2007 write-up, is due to be granted.

## 2. Claim for Retaliation under Title VII, 42 U.S.C. § 2000e (Fitts Employment Decision 9)[76]

As previously discussed, a prima facie case of retaliation requires a showing that: (1) the Plaintiff engaged in protected activity or expression; (2) Plaintiff suffered an adverse employment

---

[75] Instead, Fitts spends a great deal of time arguing that the Sheriff acted with pretext when he reassigned Fitts to the night shift. Apparently, the reassignment occurred after Fitts reported that on July 23, 2008, Sergeant James Burns called Angela Coleman a "sacred cow." (Doc. #86 at 51, 53, 55). But Plaintiff Fitts has no claim for retaliation or otherwise based on this incident. No where is the incident mentioned as the basis for a claim in the Joint Submission of Claims and Defenses (Doc. #50). Therefore, it is not properly before this court for review. (*See* Doc. #48) (directing the parties to jointly file a report with the court outlining the claims asserted in the case and specifically requiring notification of the specific employment decision challenged). The court has allowed counsel for both sides several "re-dos" in this case, but is not about to allow yet another one here so late in extra innings. (*See, e.g.,* Docs. #48, 49, 56, 59, 61, 62, 66, 80, 81, 82, 89). Because the Renewed Motion to Strike the Affidavit of Ron Eddings (Doc. #87) is relevant only to the "sacred cow" comment, it is **MOOT**.

[76] *See* footnote 72, *supra*.

action; and (3) the adverse employment action was causally related to the protected conduct. *See Harper*, 139 F.3d at 1388; *see also* Section IV.C.3., *infra*. Fitts claims that he engaged in protected activity on November 18, 2004 and July 11, 2005 when he filed charges of discrimination with the EEOC. (*See* Doc. #86 at 50). Although Plaintiff concedes that much time has elapsed between those charges of discrimination and the May 2007 contested write-up, he argues that the causal connection is nevertheless present because "the charge was still pending when he was written up" and "a lapse in time between the two does not require a finding that there is no causal relationship." (Doc. #86 at 50). This court can find no authority in the Eleventh Circuit to support Plaintiff's contention that the pendency of the charge is the relevant inquiry, nor is the temporal proximity here "very close" to allow for a finding of causation in the absence of other evidence of discrimination. *See, e.g., Maniccia v. Brown*, 171 F.3d 1364, 1370 (11th Cir. 1999) (15-month period between the employee's grievance and the adverse employment action belied assertion that the former caused the latter); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (a "three to four month disparity between the statutorily protected expression and the adverse employment action is not enough"); *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) ("In the absence of any other evidence of causation," a three month proximity "between a protected activity and an adverse employment action is insufficient to create a jury issue on causation.").

And, even assuming that Plaintiff Fitts could establish a prima facie case of retaliation, his claim nevertheless fails because he makes no attempt to explain why the write-up might have been a pretext for retaliation. *See* Section IV.F.1., *supra*. Therefore, Defendant's motion for summary judgment, as it relates to Fitts' claim for Title VII retaliation with regard to the May 2007 write-up, is due to be granted.

### 3. Claim for Race Discrimination and Retaliation under 42 U.S.C. § 1981, by and through 42 U.S.C. § 1983[77] (Fitts Employment Decision 10)[78]

As previously explained, the Eleventh Circuit applies the same analytical framework to § 1981 race discrimination and retaliation claims as it does to Title VII. *See Cooper v. Southern Co.*, 390 F.3d 695, 724-25 (11th Cir. 2004); *see also Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009), *cert. denied*, – S. Ct. – (U.S. Feb. 22, 2010) ("We apply the *McDonnell Douglas* framework when analyzing claims of retaliation brought under both Title VII and § 1981.")).  Therefore, this claim for race discrimination and retaliation fails for the same reasons did the claims in Sections IV.F.1. and 2, *supra*.  Defendant's motion as to these claims is due to be granted.

### 4. Claim for Race Discrimination under the Equal Protection Clause and 42 U.S.C. § 1981, by and through 42 U.S.C. § 1983[79] (Fitts Employment Decision 11)[80]

Once again, the Eleventh Circuit applies the same analytical framework to Title VII, § 1981, and Equal Protection race discrimination claims.  *See Cooper v. Southern Co.*, 390 F.3d 695, 724-25 (11th Cir. 2004).  Therefore, this claim for race discrimination fails for the same reasons as did the Title VII race discrimination claim.  *See* Section IV.F.1., *supra*.  Defendant's motion as to this claim is due to be granted.

## G. Claims Related the November 6, 2007 Captain Promotions

In October 2007, there were five vacancies for Captain.  (*See* Doc. #63-1 at 14, ¶ 52; *see also*

---

[77] *See* footnotes 49 and 59, *supra*.

[78] *See* footnote 72, *supra*.

[79] *See* footnote 49, *supra*.

[80] *See* footnote 72, *supra*.

Doc. #86 at 3, ¶ 52).  The Sheriff was provided a list of qualified candidates from the PBJC; Moore's

name was not on the list.  (*See* Doc. #63-1 at 14, ¶ 54; *see also* Doc. #86 at 3, ¶ 54).  Those named

on the list were awarded the positions.  Plaintiff Moore claims that she was passed over for these

promotions because of race and/or sex discrimination.

### 1.    Claim for Race and/or Sex Discrimination under Title VII, 42 U.S.C. § 2000e (Moore Employment Decision 8)

To succeed with a traditional claim for race and/or sex discrimination under Title VII,

Plaintiff Moore must follow the framework set out by *McDonnell Douglas*.[81]    Under such

framework, a presumption of discrimination exists if Moore can establish a prima facie case.  To do

so, she must show: (1) that she belongs to a protected class; (2) that she applied for and was qualified

for the position for which the employer was seeking applicants; (3) that she was denied the

promotion; and (4) that another equally or less qualified individual outside of the protected class

received the promotion or that the position remained open.  *See Vessels v. Atlanta Indep. Sch. Sys.*,

408 F.3d 763, 768 (11th Cir. 2005); *see also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089

(11th Cir. 2004).  But Plaintiff Moore makes no attempt to establish a prima facie case for this claim,

or otherwise rebut Defendant Hale's articulated legitimate, nondiscriminatory reason[82] for not

promoting Moore to the open position.  Instead, Plaintiff Moore states that her claim "is based upon

injunctive relief in placing Moore in her rightful place.[83]  If it is found that she was illegally denied

---

[81] Plaintiff Moore concedes that this is a circumstantial evidence case.  (*See* Doc. #86 at 29).

[82] Defendant articulates that Moore was not on the list of eligibles for this position and therefore was not qualified for the position.  (*See* Doc. #63-1 at 38-40).

[83] This was likely a calculated decision on Plaintiff Moore's part.  Any traditional claim based on the position fails for failure to exhaust administrative procedures.  In accordance with Title VII, Plaintiff Moore *must*, prior to filing a lawsuit in federal court, exhaust her administrative remedies.

an earlier promotion due to discrimination or retaliation, she must be placed in her rightful place."
(Doc. #86 at 55).  "[T]o make her whole, she [Moore] should be instated into the Captain position
and awarded backpay."  (Doc. #50 at 5, Moore Employment Decision 8).

Title VII does authorize injunctive relief in Section 706(g)(1).  42 U.S.C. § 2000e-5(g).  "If
the court finds that the respondent has intentionally engaged in ... an unlawful employment practice
charged in the complaint, the court may enjoin the respondent from engaging in such unlawful
employment practice, and order such affirmative action as may be appropriate."  Courts are vested
with broad authority to fashion appropriate relief, but that authority can be used only, as applicable
here, to "make whole" actual victims of discrimination by restoring them to where they would have
been but for the unlawful discrimination.  *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418-419
(1975).  That is, Title VII authorizes courts to put a victim of discrimination in the position that she
would have been in but for the unlawful discrimination.  *See Hopkins v. Price Waterhouse*, 920 F.2d
967, 9760 (D.C. Cir. 1990).  But here, Plaintiff Moore simply has not made any showing that she
would have been promoted to Captain in November 2007 "but for unlawful discrimination."  The
court can find no position for which there is any irrefutable presumption of discrimination which

---

That exhaustion is accomplished by filing a charge of discrimination with the Equal Employment
Opportunity Commission ("EEOC") within 180 days of the alleged unlawful practice.  *See* 42 U.S.C.
§ 2000e-5(b).  Although Plaintiff Moore has supplied the court with copies of two charges of
discrimination she filed with the EEOC over the years, (*see* Doc. #30, Exhs. 191, 200), neither of
those charges can be fairly read to encompass a claim regarding Plaintiff Moore's failure to be
promoted to the position of Captain in 2007.  As a result of that failure, no claim of discrimination
can rest on Title VII on the basis of the November 2007 Captain positions.  *See* 29 C.F.R. § 1601.12
(a charge is sufficient when the EEOC receives a *written* statement sufficiently precise to identify
the parties and to generally describe the action or practices complained of); *see also Johnson v. Wal-
Mart Stores, Inc.,* 987 F. Supp. 1376, 1386 (M.D. Ala. 1997) (stating that plaintiff bears the burden
of proving compliance with the preconditions to suit when defendant denies that plaintiff timely filed
a charge with the EEOC).

Moore was discriminatorily denied.  To the contrary, Moore had been promoted to Lieutenant two years before this Captain position became available, and nevertheless did not make it on the list of eligible candidates.   The court cannot fashion injunctive relief where there has been no discrimination.  Therefore, Defendant's motion for summary judgment, as it relates to the Title VII claim for the November 6, 2007 Captain position is due to be granted.

> **2.    Claim for Race and/or Sex Discrimination under the Equal Protection Clause and 42 U.S.C. § 1981, by and through 42 U.S.C. § 1983[84] (Moore Employment Decision 9)**

Plaintiff bases this claim on the same grounds as her Title VII claim – i.e., one for "rightful place."[85]   (See Doc. #50 at 5, Moore Employment Decision 9).  Therefore, for the same reasons stated in Section IV.G.1., supra, Defendant's motion for summary judgment, as it relates to the Equal Protection and § 1981 claim for the November 6, 2007 Captain position, is due to be granted.

> **H.    Fitts' Claims under Title VII for Race, Retaliation and/or Sex Discrimination as to the January 18-21, 2008 Lieutenant Positions (Fitts Employment Decision 12)[86]**

In 2008, Fitts again made the list of eligibles for Lieutenant vacancies, but was ranked number fourteen out of fourteen eligibles and thereafter was not chosen for promotion.  (See Doc. #63-1 at 15, ¶¶ 57-60, 62; see also Doc. #86 at 3, 23 ¶¶ 57-60, 62, 147, 166; Doc. #93 at 18, ¶ 166).

---

[84] See footnote 49, supra.

[85] On the merits, this claim would also fail, despite the fact that it is not subject to the same administrative prerequisites as the Title VII claim.  Moore's name was not even on the list of qualified candidates for the position.  That list, by all accounts, certifies all individuals qualified for the available position – the fact that Moore wasn't on the list means that she wasn't qualified.  Such failure prohibited the Sheriff from considering, much less promoting, Moore for one of the Captain positions.  See Vessels, 408 F.3d at 768; see also Wilson, 376 F.3d at 1089.

[86] See footnote 72, supra.

He contends that the failure to select him for the open Lieutenant positions in January 2008 constitutes race and/or sex discrimination, and/or retaliation as prohibited by Title VII.

### 1.        Race and/or Sex Discrimination

To establish race and/or gender discrimination in a failure to promote case using circumstantial evidence,[87] Fitts must show: (1) that he belongs to a protected class; (2) that he applied for and was qualified for the position for which the employer was seeking applicants; (3) that he was denied the promotion; and (4) that another equally or less qualified individual outside of the protected class received the promotion or that the position remained open. *See Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005); *see also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004). After the plaintiff has produced evidence sufficient to establish her prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the failure to promote. *See Vessels*, 408 F.3d at 767; *see also Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642-43 (11th Cir. 1998). Upon an employer's successful articulation, the burden shifts back to the plaintiff to prove that the articulated reason acted as a pretext for discrimination. *See id.* at 643; *see also McDonnell Douglas v. Green*, 411 U.S. 792, 802-03 (1973).

For purposes of summary judgment, the court assumes that Fitts has established a prima facie case of race and/or gender discrimination for the position at issue here.[88] The Sheriff articulates that the Committee interviewed fourteen candidates for the position, and then ranked them. Sheriff Hale

___

[87] Plaintiff Fitts admits that this is a circumstantial evidence case. (*See* Doc. #86 at 29.)

[88] This is a very shaky assumption indeed. The available January 2008 positions were filled by three males (the same gender as Fitts) and one African American (the same race as Fitts). Thus, all positions were *not* filled by those outside of the protected class.

then decided to promote the three highest-ranking candidates, a white female and two white males, and the sixth ranked candidate, a black male.  (*See* Doc. #63-1 at 40).  "One of the reasons Fitts scored so low was because he interviewed very poorly: he could not recall his answer to a question, he stopped in mid-sentence at one point to ask the committee what he had just said, he rambled, and he did not answer the questions well."  (Schiltz Dep. at 24-25, 30-31; Finley Dep. at 22-23, 25-26).  Aubrey Finley testified that Fitts "rambled on" and "didn't say what he did when he did evaluations for people . . . he didn't say he did evaluations."  (Finley Dep. at 25-26).  Randy Schlitz testified that while answering a question, Fitts "asked me part ways through his answer what, what he said previously.  What did I answer on the second one, I think was his words to me . . ."  (Schlitz Dep. at 25).  Schlitz further testified that Fitts could have gotten a higher score "just on a whole, the answer as a whole would have had to have been presented and would have had to have been answered to me in a, in a better response than it was given."  (Schlitz Dep. at 25).  These are legitimate, non-discriminatory reasons to select Liddell, Guy, Graben, and Holifield over Fitts for the available positions.  The subjectivity of articulated reasons does not make them any less legitimate.

> Subjective evaluations of a job candidate are often critical to the decisionmaking process, and if anything, are becoming more so in our increasingly service-oriented economy.  Take, for example, a job requiring continued interaction with the public, such as a sales clerk or wait staff position.  Attitude, articulateness, and enthusiasm, as well as appearance, can be vitally important in a job, yet there are few if any ways to gauge such qualities objectively or from a written application.  Interviews give prospective employers a chance to see if an applicant has the kind of personal qualities a service job requires and can be the best way an employer has to determine how a person interacts with others . . . Personal qualities also factor heavily into employment decisions concerning supervisory or professional positions.

*Chapman*, 229 F.3d at 1033-35.  Thus, the presumption of discrimination is eliminated (assuming one had been created in the first place), thereby shifting the burden to Fitts to come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated reasons are pretextual.  *See Chapman*, 229 F.3d at 1028.  Plaintiff has advanced the following theories on pretext: (1) the PRB did not develop the questions for the January 2008 interviews despite the procedure stated in the Sheriff's Manual; (2) prior to the interviews the PRB did not discuss appropriate scores for specific content in answer to interview questions, thus making the answer ratings totally subjective; and (3) recordings from the interviews are missing.  (*See* Doc. #86 at 56-59).  These arguments boil down to allegations that the Sheriff departed from policy, allowing for subjectivity to rule the day.  The problem for Fitts, though, is that he cannot meet head-on and rebut the Sheriff's articulated reasons for failing to choose him for promotion, nor can he establish that he was the most qualified for the job or that race and/or gender discrimination motivated the Committee not to rank him higher on the promotion list.

The court is aware that in certain circumstances, "an employer's deviation from its own standard procedures may serve as evidence of pretext."  (Doc. #86 at 33, 39, 57) (citing *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006) and *Morrison v. Booth*, 763 F.2d 1366, 1374 (11th Cir. 1985)).  The Sheriff's Manual does in fact state that the "committee will develop the interview questions that they agree are relative to the promotional position and reduce the questions to a questionnaire."  (Doc. #68, Exh. 167).  And Finley, one of the members of the Committee, testified "I did not help develop any questions."  (Finley Dep. at 12).  But the Manual does not state that *all* members of the Committee will assist with developing the questions.  That Finley did not participate in that process does not necessarily mean that standard procedure was

61

violated.

Plaintiff's argument suffers an even greater flaw. There is absolutely nothing in the record to suggest that the questions would somehow favor responses from white, female employees as opposed to black, male employees. There is no dispute that everyone was asked the same questions. Even more telling, though, is that none of the "other facts surrounding the interview process . . . indicate that the process was suspect," despite Fitts' attempt to paint them as such. *Bass v. Bd. of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095, 1108 (11th Cir. 2001); *Keaton v. Cobb County, GA*, Slip Copy, 2010 WL 212097, No. 08-11220 at *5 (11th Cir. Jan. 30, 2009) ("In *Bass*, we held that an employer's deviation from standard procedure in totaling selection criteria scores and relying exclusively upon interviews, in addition to other evidence suggesting a race-conscious decision-making process, cast doubt on the employer's proffered nondiscriminatory reason that the applicant performed poorly in an interview.").

The evidence does demonstrate that certain "interviewers could not articulate what would have caused them to give [Fitts] a higher score" and "some could not explain why they rated one person higher than another." (Doc. #86 at 57). But other interviewers were able to recall their rationale. Fitts argues that interviewers made similar comments about the state of Fitts' personal appearance, yet specific ratings varied from interviewer to interviewer. (Doc. #86 at 57-59). Of course it is neither unusual nor surprising for different interviewers to have different opinions and to consider things differently when making ranking decisions. *See Chapman*, 229 F.3d at 1031, n.21 ("Different decisionmakers are entitled to be concerned about different things"); *see also Bassano v. Hellman Worldwide Logistics, Inc.*, 310 F. Supp.2d 1270, 1280 (N.D. Ga. 2003) ("[T]he correctness of the manager's judgment regarding Plaintiff's performance is not at issue, and Plaintiff

62

cannot raise a material fact as to pretext by second-guessing their decisions."). That is precisely why *all* rankings of *all* Committee members are combined to come to a single "average" rating.

This court does not sit as a super-personnel department, weighing which Committee member got which rating right, and whether Fitts' responses should have been ranked higher (marginally or substantially) than other candidates' responses, but that is exactly what Fitts invites the court to do. *Chapman,* 229 F.3d at 1030 (quoting *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991)). Instead of inviting this court to play the role of an HR Director, to succeed in proving the Sheriff's articulated reasons pretextual, Plaintiff must meet those reasons for not selecting Fitts head-on and rebut them. "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it." *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1088 (11th Cir.2004). Fitts has wholly failed to do that. Of those chosen for the positions, contemporaneous notes indicate high level responses for Guy Liddell, compared to Fitts who could not even answer some questions.

Next, Fitts attempts to use the question of spoliation to cloud the fact that he cannot meet head on and rebut the Sheriff's articulated legitimate nondiscriminatory reasons for the promotion decision. The Code of Federal Regulations, 29 C.F.R. § 1602.14, provides that "any personnel or employment record made or kept by an employer . . . shall be preserved by the employer for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later."[89] The Sheriff's Policy Manual requires retention of documents as well. But in the Eleventh Circuit, the failure to preserve evidence is pretextual only when predicated on bad faith.

---

[89] Plaintiff argues that the Consent Decree also requires Sheriff Hale to retain documents related to promotion decisions. (*See* Doc. #86 at 38). But there is no cause of action for failure to follow the Consent Decree. (*See generally* Amend. Compl.).

"[A]n adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith." *Bashir v. Amtrak*, 119 F.3d 929, 931 (11thCir. 1997) (*citing Vick v. Texas Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975)).

> The adverse inference to be drawn from destruction of records is predicated on bad conduct of the defendant. Moreover, the circumstance of the act must manifest bad faith. Mere negligence is not enough, for it does not sustain an inference of consciousness of a weak case. Thus, under the "adverse inference rule," this court may not infer discriminatory animus on the part of the Defendants unless the facts and circumstances surrounding the destruction of the notes indicates bad faith on the part of the committee members.

*Drakeford v. Alabama Co-op. Extension Sys.*, 416 F. Supp.2d 1286, 1309 (M.D. Ala. 2006) (internal citations omitted). Here, there exists no evidence at all of intent or bad faith in Sheriff Hale's failure to locate the audio interviews from January 2008. The Sheriff produced the 2008 certification list for the contested positions, as well as various interviewers' notes written contemporaneously with the interviews. (*See* Doc. #68, Exhs. 73-105; *see also* Doc. #63, Exh. 23). The Sheriff himself is not responsible for handing over the documents related to promotions to Internal Affairs – instead, after the PRB finishes its work, the PRB gives those documents to Internal Affairs. (*See* Doc. #86 at 5, ¶ 6; *see also* Doc. #93 at 3, ¶ 6).

Because Plaintiff cannot establish that the Sheriff's articulated legitimate, nondiscriminatory reasons for failing to promote him in January 2008 were a pretext for race or gender discrimination, Defendant's motion for summary judgment, as it relates to Plaintiff Fitts' claim under Title VII for race and/or gender discrimination, is due to be granted.

2.      **Retaliation**[90]

---

[90] *See* footnote 59, *supra*.

Fitts' alternate argument is that he was denied promotion in January 2008 in retaliation for filing a charge of discrimination with the EEOC. "What is known is that by the 2008 lieutenant promotion, Fitts had filed a number of EEOC charges and now was rated the worst of any candidate." (Doc. #86 at 59). His claim fails on a number of levels, the first being a lack of a prima facie case. Although Fitts had filed three charges prior to applying for the January 2008 positions, none of those charges were filed close enough in time to the January decision to be considered causally connected. The first was filed on November 18, 2004 (Doc. #68, Exh. 192), the second on July 11, 2005 (Doc. #68, Exh. 202), and the third on May 25, 2007 (Doc. #68, Exh. 216); thus, the most recent was filed almost eight months before the contested decision was made. *Breeden*, 532 U.S. at 273-74. Even assuming the Committee members *knew* that Fitts had filed EEOC charges, the time frame is much too attenuated to allow an inference of discrimination. *Brungart*, 231 F.3d at 799. And had that inference been created, Fitts still cannot show that the Sheriff's articulated legitimate, nondiscriminatory reasons for not selecting him were a pretext for retaliation. *See* discussion Section IV.H.2., *supra*.

For the foregoing reasons, Defendant's motion, as it relates to Fitts' claim for retaliation as to the January 2008 Lieutenant positions, is due to be granted.

I. **Moore's Claims as to the February 26, 2008 Captain Promotion (Moore Employment Decisions 10, 11)**[91]

In February 2008, Moore made the list of eligibles for one Captain vacancy, but was ranked number seven out of seven eligibles and thereafter was not chosen for promotion. (*See* Doc. #63-1

---

[91] The Joint Submission of Claims and Defenses (Doc. #50) incorrectly identifies the date of this employment action as February 26, 2009. The Captain's promotion decision complained of, wherein Cleveland Moore was promoted, actually occurred in February 2008.

at 16, ¶ 64; *see also* Doc. #86 at 4, ¶ 64).  She contends that the failure to select her for the open Captain position in February 2008 constitutes sex discrimination and/or retaliation as prohibited by the Equal Protection Clause and § 1981, respectively.[92]

### 1.    Sex Discrimination under the Equal Protection Clause, by and through 42 U.S.C. § 1983[93] (Moore Employment Decision 10)

Claims brought under the Equal Protection Clause are subject to the same analytical framework as those brought under Title VII.  *See Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985) (stating that "[w]here, as here, a plaintiff predicates her liability under Title VII on disparate treatment and also claims liability under sections 1981 and 1983, the legal elements of the claims are identical . . .[and] we need not discuss plaintiff's Title VII claims separately from his section 1981 and section 1983 claims.")).  Therefore, in its analysis, the court again uses the familiar *McDonnell Douglas* burden shifting framework for circumstantial cases.

For purposes of summary judgment, the court assumes that Moore has established a prima facie case of sex discrimination for the position at issue here.  The Sheriff articulates that he took the rankings developed by the Committee and thereafter decided to promote Cleveland Moore, who was ranked fourth on the list.  (*See* Doc. #63-1 at 16, ¶¶ 66, 67; *see also* Doc. #86 at 4, 17, ¶¶ 66-67, 115; Doc. #93 at 15, ¶ 115).  The Sheriff did not select Plaintiff Moore because he has never chosen

---

[92] Interestingly, while the Statement of Facts and Claims in the Amended Complaint alleges that Moore has "sought promotions" and mentions that "Moore was not on the Captain's list" and "all of the persons who were awarded Captain positions were white males" it does not set out *when* such purportedly discriminatory acts occurred.  (Amend. Compl. ¶¶ 19, 32, 36).  In fact, no where in the Amended Complaint is there any mention of a Captain promotion in 2008, and the facts outlined in the Amended Complaint seem to fit with the decisions regarding promotion to Captain made in 2007.

[93] *See* footnote 49, *supra*.

the lowest-ranked person by Committee for promotion. (*See* Doc. #63-1 at 42). These are legitimate, nondiscriminatory reasons to promote Cleveland Moore and not Plaintiff Moore to the Captain position. Thus, the presumption of discrimination is eliminated, thereby shifting the burden to Moore to come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated reasons are pretextual. *See Chapman*, 229 F.3d at 1028.

Counsel for Plaintiff Moore has the following theories on pretext: (1) Plaintiff Moore had five months more actual lieutenant experience than Cleveland Moore; and (2) Moore had tenure and rank on Cleveland Moore and had supervised more people than him. (*See* Doc. #86 at 60). The problem with these pretext argument is that they focus on relative qualifications. The court is fully aware that, in some cases, relative qualifications may be enough to establish pretext. But this is not such a situation. Here, the Sheriff states that Plaintiff Moore ranked last on the list he received from the Committee, and that he has never chosen the last-ranked person for promotion. Plaintiff Moore has done nothing to suggest the statement is false or that it is unworthy of belief. "[A] plaintiff cannot prove pretext by simply arguing or even by showing that [s]he was better qualified than the [individual] who received the position [s]he coveted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by [gender]. We have explained, a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where the reason is one that might motivate a reasonable employer." *Alexander v. Fulton County,* 207 F.3d 1303, 1339 (11th Cir. 2000) (internal quotations omitted). Further, her theory related to seniority does nothing more than quarrel with the wisdom of the Sheriff's reasons for selecting Cleveland Moore over Plaintiff Moore. *See Pettway v. Am. Cast Iron Pipe Co.*, 494 F.2d 211, 246 n. 92 (5th Cir. 1974) ("For, after all,

seniority is necessarily an inefficient means of assuring sufficient prior job experience").

Plaintiff Moore has simply failed to come forward with sufficient evidence to permit a fact-finder to find that at least one of the articulated reasons were pretextual.  Quite to the contrary, Plaintiff Moore testified that Cleveland Moore's background was wide and broad, and that it would be reasonable to conclude that he was very qualified and a competent person to promote to Captain. (Moore Dep. at 175-176).  Plaintiff Moore also testified that it would be possible to look at all the candidates for the Captain position and determine that Cleveland Moore was the best regardless of race or sex.  (Moore Dep. at 176).  Because it is not the court's role to second-guess the wisdom of an employer's decisions so long as the decisions are not motivated by impermissible considerations, Defendant's motion for summary judgment as it relates to Moore's claim for sex discrimination with regard to the February 2008 Captain position is due to be granted.

### 2.    Retaliation under 42 U.S.C. § 1981, by and through 42 U.S.C. § 1983[94] (Moore Employment Decision 11)

Plaintiff Moore's second argument regarding the February 2008 Captain decision is that she was retaliated against when she was not chosen for the promotion.  The problem with Moore's assertion is multi-fold.  Moore filed a charge of discrimination with the EEOC on November 18, 2004 (and amended December 1, 2004), more than *three years* before the contested position was filled.[95]  (*See* Doc. #86 at 13, ¶ 80; *see also* Doc. #93 at 11, ¶ 80).  Not only that, there is absolutely no evidence that the Committee members, who actually ranked the candidates, had any knowledge

---

[94] *See* footnotes 49 and 59, *supra*.

[95] Neither can the charge of discrimination that Plaintiff Moore withdrew be used as the basis for a retaliation claim.  (*See* Doc. #63-1 at 11, ¶ 38; *see also* Doc. #86 at 3, 17, ¶¶ 38, 113; Doc. #93 at 15, ¶ 113)

that Plaintiff Moore had theretofore filed a charge of discrimination with the EEOC.  There is, therefore, not even an arguable basis of close temporal proximity between the events.  *Breeden*, 532 U.S. at 273-74.

Assuming, *arguendo*, that a presumption of discrimination had been created, the pretext analysis in Section IV.I.1., *supra* applies, and the claim cannot succeed on that separate and additional ground.  Therefore, Defendant's motion as it relates to Moore's claim for retaliation with regard to the February 2008 Captain position is due to be granted.

### J.      Moore's Claims Related to the March 6-7, 2008 Captain Promotions (Moore Employment Decisions 12, 13, 14)

In March 2008, two additional vacancies arose for the position of Captain.   Qualified candidates were interviewed for the positions, and then they were ranked. Moore was ranked last – sixth out of six candidates.  (*See* Doc. #63-1 at 17, ¶ 71, 72, 73, 74; *see also* Doc. #86 at 4, ¶¶ 72, 73, 74).  She was not chosen for promotion, and instead Ron Eddings and Dennis Berry, both white males, were chosen.  (*See id.*)  Moore believes that she was discriminated against because of her race and color, and retaliated against, when she was not chosen for promotion in March 2008.

### 1.      Race Discrimination under the Equal Protection Clause and 42 U.S.C. § 1981, by and through 42 U.S.C. § 1983[96] (Moore Employment Decision 12)

For purposes of summary judgment, the court assumes, without deciding, that Plaintiff Moore has established a prima facie case of race discrimination as related to the March 2008 Captain promotions.  Sheriff Hale has articulated that he chose Eddings and Berry for the promotions based on the recommendation of the Committee.  The Committee ranked Eddings and Berry highest, with

---

[96] *See* footnote 49, *supra*.

Moore ranking lowest. (*See* Doc. #63-1 at 43-44). These are legitimate, nondiscriminatory reasons to select Eddings and Berry for promotion over Moore, and the burden shifts to Moore to come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated reasons were pretextual for race discrimination. *See Chapman*, 229 F.3d at 1028. Counsel for Moore has the following theories on pretext: (1) Berry had previously been suspended while Moore never had been suspended; and (2) the rating system is wholly subjective and there is no explanation for why Eddings and Berry ranked higher than Moore. (*See* Doc. #86 at 60-61).

The subjectivity of the rating system used by the Committee is an argument both Plaintiffs use repeatedly throughout their opposition to summary judgment. And while it is true that, in certain situations, a subjective system may be evidence of pretext, here the system used by the Sheriff's Department is far from wholly subjective. The list of candidates originally compiled by the JCSO contains names of all of those individuals who are technically qualified for the position at issue. (*See* Doc. #63-1 at 3, ¶ 4; *see also* Doc. #86 at 1, ¶ 4). It is then the job of the Committee to rank those individuals, after reviewing supervisor's comments, personnel files, and considering interview performance. (*See* Doc. #63-1 at 3-4 ¶ 5; *see also* Doc. #86 at 1, ¶ 5). The supervisor's comments and information contained in the personnel files of the candidates may be based on the subjectivity of a supervisor, but clearly the Committee has no pull over what a supervisor commented in a personnel file. As to the interviews, all candidates are asked the same questions. Each member of the Committee then grades the candidate, and ultimately all rankings are pooled to come to a final ranking. (*See* Doc. #63-1 at 3-4, ¶ 5; *see also* Doc. #86 at 1, ¶ 5). As such, "promotion protocol [is] the same for all candidates, and provide[s] measurable facts by which all candidates [are] scored." *Gary v. Hale*, 212 Fed. Appx. 952 (11th Cir. 2007). There is absolutely nothing in the record to

70

suggest that the Committee, in an effort to mete out race discrimination, decided to score Moore last of the potential candidates.  To the contrary, the final score sheets for the individuals interviewed reveal real-time rankings after interviews and after review of personnel files.  (*See* Doc. #63, Exh. 39).  Notably, Moore's personnel file was rated a 70 by every interviewer – the lowest rating for personnel files of anyone interviewed.  (*See* Doc. #63, Exh. 39).  Further, there is nothing in the record to suggest that Sheriff Hale, in an effort to mete out race discrimination, decided to promote Eddings and Berry to the positions.  Instead, Sheriff Hale plainly states that he chose those candidates who ranked the highest and he has *never* chosen the lowest ranked candidate (that candidate here being Moore) for promotion.  *See id.* at 9559-61 ("[I]t is clear that [Plaintiff] would not have been a likely candidate for a promotion [based on her ranking] . . . ).  It is not the job of this court to decide whether Plaintiff Moore would have been the more appropriate candidate for the job, or to re-play the interviews to decide if Plaintiff Moore answered interview questions better than her competitors.  *See Chapman,* 229 F.3d at 1030 (quoting *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991))

For the foregoing reasons, Defendant's motion, as it relates to Moore's claim for race discrimination with regard to the March 2008 Captain promotion, is due to be granted.

### 2.	Retaliation under 42 U.S.C. § 1981, by and through 42 U.S.C. § 1983[97] (Moore Employment Decision 13)

In order to establish a prima facie case of retaliation, Moore must establish, *inter alia*, that the failure to promote her in March 2008 was causally connected to protected conduct.  *See Harper*, 139 F.3d at 1388.  But Plaintiff's brief in opposition to summary judgment sheds no light on what

---

[97] *See* footnotes 49 and 59, *supra*.

the purportedly protected conduct was.  Neither does the Joint Submission of Claims and Defenses, which states only that "Plaintiff was retaliated against for opposing discrimination or engaging in protected activity by the promotion of Ron Eddings and Dennis Berry to Captain and denying this promotion to the plaintiff."  (Doc. #50 at 7, Moore Employment Decision 13).  So, the court is left with the task of attempting to shore up Moore's potentially protected conduct.  Moore filed a charge of discrimination with the EEOC on November 18, 2004 (as amended December 1, 2004) (Doc. #68, Exh. 191) and filed another after she was denied promotion in June 2005, but she withdrew that charge on April 10, 2006 (Doc. #63-1 at 11, ¶ 38; *see also* Doc. #86 at 3, 17, ¶¶ 38, 113; Doc. #93 at 15, ¶¶ 102-105).   And so far as the court can tell, Moore never again filed a charge of discrimination with the EEOC.  Quite clearly, there is no causal connection between a charge of discrimination filed in 2004 with an employment decision made in 2008.  *See Breeden*, 532 U.S. at 273-74.

Even making the giant assumption that Plaintiff Moore had established a prima facie case of retaliation with regard to the March 2008 positions, her claim would nevertheless fail because there is nothing in the record to support a finding that the Sheriff's articulated legitimate, nondiscriminatory reasons for failing to promote Moore were a pretextual ruse for retaliation.  *See* Section IV.I.1, *supra*.  For the foregoing reasons, Defendant's motion for summary judgment, as it relates to Moore's claim for retaliation with regard to the March 2008 Captain promotion, is due to be granted.

3.      **Sex Discrimination under the Equal Protection Clause, by and through 42 U.S.C. § 1983[98] (Moore Employment Decision 14)**

---

[98] *See* footnote 49, *supra*.

Plaintiff Moore's sex discrimination claim is subject to the same analysis as her race discrimination claim. Her claim fails because she has done nothing to establish that the Sheriff's articulated reasons for not choosing her for promotion were a pretextual ruse for gender discrimination. Therefore, Defendant's motion, as it relates to Moore's claim for gender discrimination on the March 2008 Captain promotion, is due to be granted.

### K.    The Qualified Immunity Defense Applicable to Claims under 42 U.S.C. § 1983

Even assuming, *arguendo*, that Plaintiffs' claims brought against the Sheriff under § 1983 were not due to be dismissed on the merits, the individual claims against him would nevertheless be due to be dismissed on qualified immunity grounds. Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An officer will be entitled to qualified immunity if his actions were objectively reasonable, that is if an objectively reasonable officer in the same situation could have believed that his actions were not contrary to the law. *Anderson v. Creighton*, 483 U.S. 635, 638-41 (1987). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir.2002) (internal quotation marks and citations omitted).

Thus, this court must first inquire whether Plaintiffs have shown that the challenged conduct violates a statutory or constitutional right, and in doing so must review the facts in the light most favorable to Plaintiffs. *See id.* (internal citations omitted). The law establishing the violation must

be pre-existing, that is, it must be in effect at the time of the alleged violation. *Id.* Moreover, Plaintiffs must show that the law establishing the violation was clearly established. *Id.* In other words, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The relevant inquiry is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (citation omitted). Thus, "[i]f objective observers cannot predict-at the time the official acts-whether the act was lawful or not, and the answer must await full adjudication in a district court years in the future, the official deserves immunity from liability for civil damages." *Foy v. Holston*, 94 F.3d 1528, 1534 (11th Cir.1996) (*citing Elder v. Holloway*, 510 U.S. 510, 513-15 (1994)).

There is no real dispute that the right to be free from employment discrimination was clearly established at the time the contested promotion decisions were made. *See Johnson v. City of Fort Lauderdale*, 126 F.3d 1372, 1378 (11th Cir.1997) ("[T]he right to be free from workplace discrimination and harassment on the basis of race ... [was] clearly established at the relevant times"); *Bogle v. McClure,* 332 F.3d 1347, 1355 (11th Cir.2003) ("[T]here is no doubt that in May 2000, ... it was clearly established that intentional discrimination in the workplace on account of race violated federal law.") (citation omitted). However, the "clearly established" prong of the qualified immunity analysis asks the question "in light of the specific context of the case, not as a broad general proposition." *Williams*, 341 F.3d at 1269 (internal quotation marks and citations omitted).

Here, even making the giant leap from reality that the court's decisions on the merits of the § 1983 claims in this case were close calls (*see* Sections IV.B.3-4., IV.C.1-3., IV.D.1-2., IV.E., IV.F.3-4, IV.G.2, IV.I.1-2., IV.J.1-3., *supra*), Sheriff Hale would nevertheless be entitled to qualified

74

immunity as to those claims.  Public officials "are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."  *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Each of the contested promotion decisions followed the promotion process set forth by the Jefferson County Sheriff's Office.  Individuals of all genders and all races were chosen for various promotions, as were individuals who previously filed charges of discrimination with the EEOC and those who had not.  For every promotion decision, an individual who ranked higher than Moore and/or Fitts, after interviews and reviews of personnel files, was selected for the contested position.  Sheriff Hale has never chosen the lowest ranked person for promotion.  Plaintiff Moore herself was promoted as a result of the promotion process.  There is nothing in the record to support a finding that Sheriff Hale was motivated, even in part, by a dislike or hostility to any protected class.  *See Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1282 (11th Cir. 2008); *see also Stanley v. City of Dalton, Ga.*, 219 F.3d 1280, 1296 (11th Cir. 2000) (A defendant is entitled to qualified immunity where "the record indisputably establishes that the defendant in fact was motivated, at least in part, by lawful considerations.") (emphasis in original).  Therefore, he is entitled to the defense of qualified immunity as to all 42 U.S.C. § 1983 claims brought against himself in his individual capacity.

**V.    Conclusion**

For the various reasons asserted above, there being no dispute as to any material fact, Defendant Sheriff Hale's Second Motion for Summary Judgment (Doc. # 63) is due to be granted in its entirety.  A separate order will be entered dismissing all claims.

**DONE** and **ORDERED** this _____30th_____ day of August, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE